## 37051. RAINES v. THE STATE.

PER CURIAM.

Enoch Raines was convicted of murdering his wife and sentenced to life imprisonment. He brings this appeal enumerating as error the trial court's failure to give his requested charges on voluntary manslaughter and involuntary manslaughter.

The defendant, Enoch Raines, lost the use of his legs in 1961 in a car accident which left him paralyzed from the waist down. In 1971, he married the victim. She had one child, whom he adopted. His wife, Bertha Mae Raines, bore twins in 1978, but the defendant testified that although he was not their natural father he had "adopted" them. Also in 1978 the defendant's legs were amputated. As a result of the amputation he customarily wore a device called a "bucket" to give him stability.[1] On the night he shot and wounded his wife, he was not wearing the bucket on instruction of a plastic surgeon who had recently performed some skin grafts.

The defendant testified that he awoke in the early morning hours of December 21, 1979, when he thought he heard a noise outside. Since there had been some "incidents" in the neighborhood, he walked on his hands to the back door to check outside, taking his gun (a double action revolver) from under the mattress.[2] Seeing nothing, he closed the back door. On his way back to the bedroom he

---

[1] When the defendant's doctor was asked, "What would the condition of his balance be without that stand?" he replied, "Well, categorically it would be awkward to say the least."

[2] According to one of the state's witnesses, a double action revolver is one which

stopped and got a cigarette from his wife's pocketbook, where he found a letter addressed to her boyfriend. He took the letter back to the bedroom and asked his wife "what it was all about." According to Raines, "She started laughing and calling me all kinds of names." Raines testified that his wife called him "half a man" and "said that I wasn't no good, that I couldn't have sex relationships with her the way other men do," laughing all the while. He insisted, however, that he was not angry but only disappointed and hurt. He said he had no reaction to finding the letter since he had known his wife went with other men since 1974 and that although he didn't approve of it he had learned to accept it. He maintained that the shooting was entirely accidental, that he was balancing himself by having propped his arm up against a low table bearing a lamp and that as he started toward the bed to lay down his arm slipped, he fell, and the gun fired twice.[3]

Raines then called the police and said he had shot his wife and he needed an ambulance and a police officer. The ambulance arrived first. One attendant testified that he heard Raines say that he was angry with his wife, they were fussing, and he shot her. The other attendant testified that Raines told him he had gotten into an argument with his wife and shot her. He also testified that Raines did not appear to be angry but was very upset. The first police officer to arrive testified that Raines told him "It was my fault and the gun went off." He apparently did not mention any argument.

The ambulance attendants took both the victim and the defendant to the hospital for treatment. The defendant was taken in for treatment because he was bleeding from the lower part of his body. While in the emergency room, the defendant was interrogated by a police officer. The officer testified that except for one outburst of apparent anger when the defendant grabbed the rails on his bed and shook them, he appeared to be excited and nervous but not angry. The defendant seemed not to hear the detective but made a number of spontaneous statements, among them, "I raised up and fell over and the gun went off." An officer who spoke with the victim shortly after she arrived at the hospital testified: "I asked her what happened and she stated that she and her husband had been drinking and

---

fires without having been cocked (i.e., when the trigger is pulled), in contrast to a single action revolver which must be cocked by pulling the hammer back before it will fire. In order for a double action revolver to fire a second shot, the trigger must be released and repulled or the hammer must be pulled back a second time.

[3] Raines maintained he heard only two bangs; the evidence shows, however, that his wife sustained three bullet wounds and that three empty shell casings were found by the investigating officer.

smoking dope and that they got into an argument and that he had shot her." The victim died as a result of her wounds after six days in the hospital.

The defendant admitted having fired his gun during an argument with his wife on a previous occasion.

The defendant made written requests that the trial court instruct the jury as to voluntary and involuntary manslaughter. The trial judge refused those requests. The jury was charged as to murder and accident and found the defendant guilty of murder. Defendant appeals, enumerating error upon the refusal of his requests to charge.

1. Code Ann. § 26-1102 provides that "A person commits voluntary manslaughter when he causes the death of another human being, under circumstances which would otherwise be murder, if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. . . ." According to the defendant's testimony his wife was carrying a letter she had written to her boyfriend and upon her husband's discovery of it not only admitted her adultery but taunted him with it as well as with degrading comments about his disability. The evidence here shows sufficient "serious provocation" to authorize a charge on voluntary manslaughter. *Campbell v. State,* 204 Ga. 399, 403 (49 SE2d 867) (1948); *Burger v. State,* 238 Ga. 171 (1) (231 SE2d 769) (1977); *Vick v. State,* 116 Ga. App. 25 (3) (156 SE2d 125) (1967). Yet the state argues that the trial court correctly refused to give the requested charge because the defendant claimed accident and repeatedly denied having been provoked by his wife's actions. Nevertheless, we find that the defendant was entitled to a charge on voluntary manslaughter. As we stated in *Henderson v. State,* 234 Ga. 827, 831-832 (218 SE2d 612) (1975), "Although the appellant's testimony may have excluded voluntary manslaughter as a possible verdict, the evidence as a whole did not. 'On the trial of a murder case, if there be any evidence, however slight, as to whether the offense is murder or voluntary manslaughter, instruction as to the law of both offenses should be given the jury.' "

2. The defendant also claims that the trial court erred in refusing to give a requested charge on involuntary manslaughter. He contends the trial court erred in not charging both subsections (a) and (b) of Code Ann. § 26-1103. We note at the outset that since defendant claims accident and does not claim self-defense, *Crawford v. State,* 245 Ga. 89 (3) (263 SE2d 131) (1980), is not controlling (see 245 Ga. at 92, 94).

Subsection (a) of Code Ann. § 26-1103 provides in pertinent part: "(a) A person commits involuntary manslaughter in the

commission of an unlawful act when he causes the death of another human being without any intention to do so, by the commission of an unlawful act other than a felony." The defendant argues that his testimony shows he did not intend to kill or shoot his wife. He urges that the jury could have found that his wife died without intention on his part while he was engaged in an unlawful act other than a felony, namely the misdemeanor of pointing a pistol at another. Code Ann. § 26-2908. We disagree. The defendant's wife was shot three times, once in the left flank, once in the left breast and once in the area of the abdominal wall. The shot in the left flank fragmented her left kidney necessitating its removal. Had she survived, the defendant would have been guilty not merely of pointing a pistol at another but of aggravated battery which is a felony. Hence, Code Ann. § 26-1103 (a) was not applicable and the trial judge did not err in refusing the requested charge.[4]

3. Defendant further contends, as noted above, that the trial court erred in not charging subsection (b) of Code Ann. § 26-1103, which provides in pertinent part: "(b) A person commits involuntary manslaughter in the commission of a lawful act in an unlawful manner when he causes the death of another human being, without any intention to do so, by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm." Defendant contends that procuring his loaded handgun because he heard threatening noises outside was the commission of a lawful act, and that holding a loaded gun when he was not wearing his "bucket," and therefore lacked stability, constituted "the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm." We disagree. Accepting defendant's argument that he acted "in an unlawful manner likely to cause death or great bodily harm," then he was guilty of the crime of reckless conduct, Code Ann. § 26-2910,[5] and his contention that he was engaged in a lawful act is not sustainable. See *Crawford v. State,* supra. The trial court did not err in refusing to charge the law of involuntary manslaughter.

---

[4] The case of *Kerbo v. State,* 230 Ga. 241 (196 SE2d 424) (1973), relied on by the defendant, was overruled as to another point in *State v. Stonaker,* 236 Ga. 1, 2 (222 SE2d 354) (1976). It is inapplicable here because in *Kerbo* there was evidence that the defendant had intentionally pointed the pistol at the deceased who was fatally wounded by a single shot.

[5] "A person commits a misdemeanor when he causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause the harm or endanger the safety, and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Code Ann. § 26-2910.

For the reasons stated in division one, the judgment must be reversed.

*Judgment reversed. All the Justices concur, except Jordan, C. J., Hill, P. J., and Marshall, J., who dissent to Division 1, and Undercofler and Smith, JJ., who dissent to Divisions 2 and 3.*

DECIDED APRIL 21, 1981.

*Baynard & Zeese, Robert E. Baynard,* for appellant.
*William S. Lee, District Attorney, Brown Moseley, Assistant District Attorney, Arthur K. Bolton, Attorney General, Russell N. Sewell, Jr., Assistant Attorney General,* for appellee.