## S90A0807. PEEBLES v. THE STATE.
### (396 SE2d 229)

FLETCHER, Justice.

In separate trials, appellant James Thomas Peebles, and his nephew Richard Peebles, were convicted of the murder and kidnapping with bodily harm of Mary Myrtle Higdon Dunn. They were each given consecutive sentences of life imprisonment. Richard Peebles' convictions and sentences were affirmed in *Peebles v. State*, 260 Ga. 165 (391 SE2d 639) (1990). We affirm appellant's convictions and sentences herein.[1]

The evidence shows that on the afternoon of December 12, 1988, the defendants picked up the victim as she was walking down a rural road near her home in Fannin County. After going to a gas station and a liquor store, they went to the defendants' residence to "party." They consumed a substantial amount of liquor, and the victim became loud and boisterous. Appellant and the victim began to argue. Appellant became violent, and he bound the victim's hands and feet with rope and tied her to a chair. Richard Peebles testified that appellant "started messing around with her. . . . He unbuttoned her shirt and took a pair of scissors and cut her bra off." He eventually marched her out of the house. She stumbled and fell, and he shot her in the back of her head, thereby killing her.

The victim's body was found on December 13, 1988. Her wrists and ankles had been bound by rope. Paper towels were found in the

---

[1] The crimes in this case were committed on December 12, 1988. Appellant was indicted on March 6, 1989. The trial began on August 7, 1989, and ended on August 11, 1989. Appellant filed a motion for new trial on September 13, 1989. The motion for new trial was denied on November 8, 1989. Appellant filed a notice of appeal on November 22, 1989. The appeal was docketed in this Court on March 22, 1990. The case was submitted for decision without oral argument on May 4, 1990.

vicinity of the body.

On December 16th, law enforcement authorities executed a search warrant at appellant's residence on unrelated theft charges. As the officers arrived, appellant began to run. He put an object in his pocket and discarded it in an area in which a .22 caliber Magnum semi-automatic pistol was found. A nail punch was found in appellant's pocket. The officers also recovered a roll of paper towels, hair found on a bed in the house, rope tied in knots similar to the knots on the rope which bound the victim when her body was discovered, .22 caliber shell casings, and bullet fragments found in a tree.

A firearms examiner testified on behalf of the state that the .22 caliber pistol found on appellant's property had been altered by an instrument similar to the nail punch seized from appellant. It was this witness' opinion that the bullet recovered from the victim's head was fired from the same weapon that fired the spent bullets and bullet fragments found on appellant's property.

A microanalyst testified on behalf of the state that paper towels found in the vicinity of the victim were similar in size, color, and construction with paper towels found on appellant's property; the microscopic characteristics of the hair taken from appellant's house were consistent, and could have had a common origin, with the victim's hair; the construction and composition of the rope found on appellant's property was consistent with rope used to tie up the victim.

After being arrested appellant made two statements to the police which were admitted in evidence. In one statement, made on December 16, 1988, appellant stated that he and his nephew picked up the victim and took her to a package store where they purchased some beer. Afterwards, they "dropped the woman off back where they had picked her up." In a second statement, made on December 27, 1988, appellant stated that after he and his nephew Richard had picked up the victim, Richard forced appellant at gunpoint to drive to their residence, where Richard later tied up the victim and killed her.

1. Appellant argues that the trial court erred in finding that his waiver of rights preceding the making of his first statement to police on December 16th was knowing and voluntary, in that the police interrogated him on the murder charge after advising him that he was under suspicion for theft by receiving.

In *Colorado v. Spring*, 479 U. S. 564 (107 SC 851, 93 LE2d 954) (1987), the United States Supreme Court has held that a law enforcement officer's failure to advise a suspect as to the crimes about which he is to be questioned prior to the suspect's waiver of his *Miranda* rights is not relevant to the question of whether the suspect's waiver was knowing and voluntary. "[T]he additional information could affect only the wisdom of a *Miranda* waiver, not its essentially voluntary and knowing nature." 107 SC at 859.

Appellant also contends that his December 27th statement was inadmissible under *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), in that he had expressed a desire to deal with the police only through an attorney on December 17th.

> If an accused asserts his right to counsel during custodial interrogation, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, [supra].

*Ford v. State*, 257 Ga. 461, 466 (6) (360 SE2d 258) (1987). In this case, the trial court was authorized to find that although appellant did express a desire to deal with the police only through an attorney on December 17th, he initiated further talks with police on December 21st and gave a statement to police on December 27th after again waiving his *Miranda* rights.

After conducting a *Jackson-Denno* hearing, the trial court determined that these statements were knowing and voluntary and thus admissible. A trial court's determination of such factual questions relating to the admissibility of a confession are upheld on appeal unless they are clearly erroneous. E.g., *Dawson v. State*, 258 Ga. 416, 418 (4) (369 SE2d 760) (1988). The findings in this case are by no means clearly erroneous.

Accordingly, the trial court did not err in charging the jury that, "the significance to be attached to" appellant's statements were "matters exclusively within the province of the jury."

2. The trial court did not err in denying appellant's motion for change of venue.

Appellant made no showing that the atmosphere in the community was so inherently prejudicial due to pretrial publicity that he could not receive a fair trial; nor did the questioning of prospective jurors on voir dire examination establish that appellant could not receive a fair trial due to the prejudice of individual jurors. *Lemley v. State*, 258 Ga. 554 (4) (372 SE2d 421) (1988).

3. Appellant argues that the trial court erred in allowing a witness to testify that she had seen appellant after the victim's body was discovered, and he was acting differently than he acted on other occasions in that, "[h]e was kind of slumbered down in the car, and he acted like he was tired." Appellant also complains of the witness' testifying that she had prior dealings with appellant and his nephew, "And, I just felt like that Richard was looking up to Tommy as a father or a guardian or something." Appellant contends that this was inadmissible opinion testimony from a lay witness.

To the extent that the foregoing testimony constituted the expression of an opinion by a lay witness, such opinion was a mental deduction from facts which were within the knowledge of the witness and to which the witness testified. E.g., *Spencer v. State*, 236 Ga. 697 (4c) (224 SE2d 910) (1976); *O'Kelley v. State*, 175 Ga. App. 503 (3) (333 SE2d 838) (1985); OCGA § 24-9-65.

4. The trial court did not err in refusing to instruct the jury on the crime of false imprisonment as a lesser included offense of kidnapping with bodily injury.

Where, as here, the evidence shows either the commission of the completed offense as charged, or the commission of no offense, the trial court is not required to charge the jury on a lesser included offense. *Hambrick v. State*, 174 Ga. App. 444 (2) (330 SE2d 383) (1985) and cits.

5. Appellant contends that the trial court erred in charging the jury that it could find appellant guilty of the lesser included offense of involuntary manslaughter only if the jury believed the statement given by co-defendant Richard Peebles on December 17, 1988.

Citing *Raines v. State*, 247 Ga. 504 (1) (277 SE2d 47) (1981), and *Nelson v. State*, 124 Ga. 8 (52 SE 20) (1905), appellant argues that this charge was unduly restrictive. We disagree. The only evidence that appellant may have committed involuntary manslaughter by killing the victim "without any intention to do so," OCGA § 16-5-3, is found in the co-defendant's December 17th statement. *Raines* is thus distinguishable. In charging the jury, the trial judge emphasized that he was not intimating or expressing any opinion upon this evidence. Therefore, the rule applied in *Nelson* was not violated.

We find this enumeration of error to be without merit.

6. The evidence is sufficient to authorize a rational trier of fact to find appellant guilty of murder and kidnapping with bodily injury beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur, except Weltner, J., not participating.*

DECIDED OCTOBER 1, 1990.

*David E. Ralston*, for appellant.
*Roger G. Queen*, District Attorney, *Michael J. Bowers*, Attorney General, *C. A. Benjamin Woolf*, for appellee.