In the Supreme Court of Georgia

Decided: March 7, 2016

S15A1708. CLOUGH v. STATE.

BENHAM, Justice.

Appellant Duane Clough seeks review of his convictions related to the

death of Christopher Watkins and the aggravated assaults of Michelle Clough,

who was appellant's estranged wife, and Mary Thomas, who was appellant's

mother-in-law.[1] Appellant contends the trial court erred when it failed to give

[1] The crimes occurred on October 16, 2009. On October 4, 2010, a Carroll County grand jury returned a true bill of indictment charging appellant as follows: (1) malice murder of Christopher Watkins, (2) felony murder (aggravated assault) of Christopher Watkins, (3) felony murder (burglary) of Christopher Watkins, (4) aggravated assault (with intent to murder) of Christopher Watkins, (5) aggravated assault (with a knife) of Christopher Watkins, (6) possession a knife during the commission of a felony (aggravated assault of Christopher Watkins), (7) possession of a knife during the commission of a felony (burglary), (8) criminal attempt to commit a felony (murder of Michelle Clough), (9) aggravated battery (family violence against Michelle Clough), (10) aggravated assault (family violence against Michelle Clough), (11) burglary (with the intent of commit a felony-- aggravated assault of Michelle Clough), (12) possession of a knife during the commission of a felony (aggravated assault of Michelle Clough), (13) aggravated assault (of Mary Thomas with a knife), and (14) aggravated assault (of Mary Thomas with a snow globe). At the end of the trial, which lasted from October 24 to October 28, 2011, a jury found appellant guilty on all charges. On November 8, 2011, the trial court sentenced appellant to life without parole for malice murder plus the following consecutive sentences: 5 years for each of the three counts of possession of a knife during the commission of a felony, 30 years for criminal attempt to commit a felony, 20 years for aggravated battery–family violence, 20 years for burglary, 20 years for aggravated assault (of Mary Thomas with a knife), and twenty years for aggravated assault (of Mary Thomas with a snow globe). The remaining counts merged or were vacated as a matter of law. Appellant moved for a new trial on November 17, 2011, and filed amendments on July 16, 2012, and May 1, 2013. The trial court

a requested charge on voluntary manslaughter. Because we agree, we now reverse in part.

The evidence shows that in the early morning hours of October 16, 2009, appellant drove by his mother-in-law's house. Outside her home were several vehicles owned by Watkins which had been parked there for a few days prior to the incident. At that time, appellant and Michelle had been separated since February or March 2009, and Michelle had been staying at places other than the marital home in Alabama, including staying at her mother's house in Carroll County. On the night in question, appellant began banging on the window of Thomas's house at about 2 a.m. Sometime later, appellant broke into the house and went to the back bedroom where he found Michelle and Watkins sleeping. Appellant grabbed Michelle and tossed her across the room. When Watkins awoke, appellant stabbed Watkins to death. Michelle testified that neither she nor Watkins attempted to fight appellant. Both Thomas and Michelle stated that Watkins was praying aloud while appellant attacked him. During his attack of

held a hearing on the motion for new trial, as amended, on January 20, 2015, and denied the motion on January 28, 2015. Appellant filed a notice of appeal on February 24, 2015. The case was docketed to the September 2015 Term of this Court and submitted for a decision to be made on the briefs.

Watkins, appellant yelled, "This is what you get for f***ing somebody's wife." After killing Watkins, appellant severely beat Michelle, including hitting her with a chair and stomping a knife into her face. Meanwhile, Thomas made an attempt to call the police. When appellant saw Thomas with the phone in her hand, he attacked her with a glass snow globe and stabbed her hand with a knife. Appellant then fled the scene and went to his mother's house where he was apprehended by authorities.

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant's sole enumeration of error is that the trial court erred when it refused to give his requested charge on voluntary manslaughter. A written request to charge on an included offense must be given if there is any evidence to support it, however slight such evidence might be. See Morgan v. State, 290 Ga. 788 (2) (725 SE2d 255) (2012); Beam v. State, 265 Ga. 853 (6) (463 SE2d 347) (1995); Raines v. State, 247 Ga. 504 (1) (277 SE2d 47) (1981); Phillips v. State, 238 Ga. 497, 499 (233 SE2d 758) (1977).

In this case, the trial court declined to give the charge as it was troubled by the fact that appellant entered his mother-in-law's house, a place appellant had no lawful right to be. During the charge conference, the trial court stated as follows:

> I don't think the law in Georgia is you can drive by any ol' house and see a strange car, it ain't your house and it's not your spouse's house, and decide to go kick the door in. That is not the law in Georgia.
>
> ***
>
> What I'm positive of is that Georgia law never, the law makers never envisioned the scene and scenario that we have presented in this court to be an excused murder. If the jury were to find that [appellant] is responsible for the killing[,] then Georgia law can't construe that as manslaughter. I see no way to construe it as manslaughter.

In addition, at the motion for new trial hearing, the trial court noted:

> Certainly, voluntary manslaughter does not mean you can go to somebody else's house and commit a burglary, so that you can put yourself in the position of seeing something that you think would get you voluntary manslaughter; that's absurd.

Finally, in its order denying appellant's motion for new trial, the trial court reasoned as follows:

> Upon listening to all the evidence in this case, it was clear [appellant] was acting not out of a sudden impulse, but out of revenge. There was no evidence that [appellant] suffered from "serious" provocation sufficient to excite deadly passion in a

4

reasonable person when he drove by his estranged wife's mother's home and observed a strange vehicle there. There was no serious provocation to authorize him to then break down the door in that house upon observing a boat that he did not recognize on the mother-in-law's property. The Court acknowledges, that had this occurred in some home where [appellant] had some right to be in, that when he observed his estranged wife in bed with another man, that this would be cause to charge the jury with the lesser included charge of voluntary manslaughter, that does not apply in this case. It is not the law that upon learning or strongly suspecting that a spouse is being unfaithful, that one can then enter into any property one suspects her of being to confirm that belief, and then say that the confirmation gives rise to the sudden impulse.

We agree with appellant that the trial court erred when it failed to give the requested charge on voluntary manslaughter. Georgia's voluntary manslaughter statute states:

A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

OCGA § 16-5-2 (a). As far as the murder of Watkins is concerned, there is slight evidence that appellant acted out of irresistible passion. The record shows

5

that when appellant came upon his wife and her paramour, appellant stabbed Watkins while yelling "This is what you get for f***ing somebody's wife." Evidence of adulterous conduct can be evidence of "serious" provocation warranting the trial court giving a charge on voluntary manslaughter. See Brooks v. State, 249 Ga. 583, 585 (292 SE2d 694) (1982). What transpired up to the point of the murder of Watkins, including appellant's possible prior knowledge that his wife was having an affair, appellant's possible prior knowledge of Watkins' identity, the parties' separation after fifteen years of marriage, appellant's observing unfamiliar vehicles at his mother-in-law's home, and appellant's unlawful entry in to his mother-in-law's house all go to the sufficiency of the provocation which would excite a reasonable person. When there is evidence of alleged provocation, the sufficiency of the provocation is generally for the jury to weigh and decide, not the trial court. See Goforth v. State, 271 Ga. 700 (1) (523 SE2d 868) (1999) (it is for the jury to determine whether the defendant acted with passion or revenge). See also Lynn v. State, 296 Ga. 109 (2) (765 SE2d 322) (2014) ("it is for the jury to determine what facts are proven, to weigh the evidence, and to decide if defendant is guilty of

6

murder or voluntary manslaughter") (citing Freeman v. State, 158 Ga. 369, 371 (123 SE 126) (1924)).

Here, the trial court stated that the only reason it did not give a charge on voluntary manslaughter was because appellant was at his mother-in-law's house where he had no right to be. Presumably, had the same facts played out at the marital home, the trial court would have given the charge as requested. This reasoning is an overreach by the trial court. First, OCGA § 16-5-2 (a) does not place such territorial restrictions on its application. Secondly, the trial court's conclusion is essentially a decision about the sufficiency of the provocation, rather than a decision about whether there is any evidence of voluntary manslaughter. Again, the sufficiency of the provocation is an issue for the jury. Goforth v. State, supra, 271 Ga. at 701. Under the circumstances of this case, the trial court should have given the charge as requested and its failure to do so constituted reversible error. See Washington v. State, 249 Ga. 728 (292 SE2d 836) (1982); Raines v. State, 247 Ga. 504 (277 SE2d 47) (1981).

Accordingly, appellant's conviction and sentence for malice murder is reversed. Because the malice murder conviction is now reversed, appellant's convictions for felony murder (aggravated assault of Watkins) and felony

murder (burglary) are no longer vacated as a matter of law. However, because of the failure to give the charge on voluntary manslaughter, appellant's conviction for felony murder (aggravated assault of Watkins) is also reversed. See Edge v. State, 261 Ga. 865 (2) (414 SE2d 463) (1992). Upon remand, the State may retry appellant for malice murder and felony murder (aggravated assault of Watkins) or it may, instead, have the trial court sentence appellant for felony murder (burglary).[2] See, e.g., Cochran v. State, 276 Ga. 283 (2) (276 Ga. 283) (2003). The guilty verdicts on the other counts, which are also unaffected by a charge on voluntary manslaughter, are affirmed; however, the trial court may be required to merge or un-merge some of those counts depending on the disposition of the murder charges on remand (e.g., the burglary count would merge if appellant is sentenced for felony murder predicated on burglary).

Judgment affirmed in part, reversed in part and remanded. All the Justices concur.

---

[2]The voluntary manslaughter charge is inapplicable to felony murder predicated on burglary and so that conviction stands. See Edge v. State, 261 Ga. at 867, n.3.

S15A1708. CLOUGH v. THE STATE.

BLACKWELL, Justice, concurring.

The Court concludes that the error in failing to charge the jury on voluntary manslaughter as a lesser included offense does not require that appellant be retried for the felony murder based on burglary. That conclusion is consistent with Edge v. State, 261 Ga. 865 (414 SE2d 463) (1992), and its progeny, which generally limit the consideration of voluntary manslaughter as a lesser offense included in felony murder to cases in which the felony murder is predicated on a felonious assault or battery that is directed against the homicide victim and that forms an integral part of the killing itself. See Grimes v. State, 293 Ga. 559, 561 (2) (748 SE2d 441) (2013). See also Sanders v. State, 281 Ga. 36, 37-38 (1) (635 SE2d 772) (2006); Sims v. State, 265 Ga. 35, 36 (3) (453 SE2d 33) (1995). Because that conclusion is consistent with our existing precedents, I concur fully in the judgment and opinion of the Court. I write separately, however, to note my growing discomfort with our decisional law in this area.

The law of voluntary manslaughter reflects an understanding that even a reasonable person might — with sufficiently serious provocation — be seized by a sudden, violent, and irresistible passion that impels him to do violence to another, and when such violence leads to a death, the killing is wrongful, but it is not as culpable as an intentional killing in the absence of such provocation and passion. See OCGA § 16-5-2 (a). Considering the rationale for voluntary manslaughter, the limitation of Edge and its progeny strikes me as quite sensible in cases in which the accused already was engaged in the commission of the underlying felony prior to any provocation and resulting passion. See, e.g., Amos v. State, 297 Ga. 892, 894 (2), n.2 (778 SE2d 203) (2015). In those cases, the criminal intent associated with the underlying felony — the intent that substitutes for the malice ordinarily required for a murder — preexisted the provocation and passion, and it is, therefore, in no way mitigated by the provocation and passion. Likewise, the limitation of Edge and its progeny seems sensible in cases in which the underlying felony has nothing to do with the sort of provoked and impassioned violence with which the law of voluntary manslaughter is concerned — felony murder predicated on rape, armed robbery, or trafficking in cocaine, for instance.

2

I have more difficulty, however, with cases in which the underlying felony is not itself in the nature of a felonious assault or battery, but rather is a separate crime that is intended to facilitate the commission of the felonious assault or battery that forms an integral part of the killing. In a thoughtful concurrence, Justice Melton has offered one example of such a case:

> For example, if a convicted felon who did not have a firearm was sufficiently provoked such that a killing qualified as voluntary manslaughter, and then that felon immediately grabbed a nearby gun and shot and killed the victim while still in the heat of passion, it is difficult to see how the possession of the firearm in that instance would be independent of the killing itself and not an integral part of the killing of the victim. Indeed, just as the aggravated assault in that instance would have been committed only as a result of sufficient provocation, the actual possession of the firearm used during the crime was only accomplished as a result of that same provocation as well. While the crime of possession of a firearm by a convicted felon, in and of itself, can be accomplished through the mere possession of a firearm by that felon regardless of his or her mental state, that does not change the fact that the murder committed with that firearm would still amount to only voluntary manslaughter if it were committed solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation. In this connection, where the possession of a firearm is accomplished through the very same irresistible passion that is tied to the aggravated assault . . . it seems to me, at the very least, that the defendant should be entitled to a jury charge on voluntary manslaughter to potentially mitigate the specific offense of felony murder predicated on possession of a firearm by a convicted felon.

3

<u>Wallace v. State</u>, 294 Ga. 257, 262-263 (754 SE2d 5) (2013) (Melton, J., concurring) (citations, punctuation, and emphasis omitted). But as Justice Melton noted, this Court has rejected the idea that voluntary manslaughter can be a lesser included offense of felony murder in those circumstances. See id. at 263 (citing <u>Lawson v. State</u>, 280 Ga. 881 (635 SE2d 134) (2006)).

This case poses the same sort of difficulties. Although burglary often has nothing to do with the sort of provoked and impassioned violence with which voluntary manslaughter is concerned, the burglary in this case was an unlawful entry into a residence *for the purpose of committing aggravated assault*. See OCGA § 16-7-1 (b). And there is some evidence that appellant may have known before he entered that his wife was sleeping inside the residence with her paramour, which, the Court concludes, could have been sufficient provocation for voluntary manslaughter. The Court holds that appellant was entitled to have the jury consider voluntary manslaughter as a lesser offense included in malice murder, as well as felony murder predicated on an aggravated assault. But <u>Edge</u> and its progeny reject the same consideration for felony murder predicated on a burglary in aid of an aggravated assault, and faithfully applying that precedent,

so does the Court today. That result seems rather odd,[1] but it is what our existing precedents require, precedents that I am — for today, at least — content to follow.[2]

I am authorized to state that Justice Melton joins this concurrence.

---

[1] As another example of this oddity, imagine a father walking peacefully through his neighborhood. He is headed for a baseball game, and he is carrying a baseball bat. He passes by a house, and as he does, a man calls out to him from the front porch. The man begins to harass the father, eventually telling the father that the man has been molesting the father's young daughter for some time. The man then begins to taunt the father with vicious and graphic accounts of the molestation. The father is enraged by the taunts, he runs onto the front porch, and he beats the man to death. That killing, quite clearly, might amount only to voluntary manslaughter. But now suppose that, as the father runs onto the porch, the man retreats into the house, stepping just across the threshold. Now, if the father beats the man to death, the State can avoid any consideration of voluntary manslaughter simply by charging the father with murder in the commission of a burglary (the father having entered the home without authority and with the intent to commit aggravated assault therein). If anything is to be learned from today's decision, it is the unfortunate lesson that a clever prosecuting attorney in many cases can simply plead around voluntary manslaughter.

[2] I note that appellant has not asked us to reconsider these precedents, and no party to this case has briefed the issues raised in this concurring opinion.