FINAL COPY
294 Ga. 375

S13A1317.  JESSIE v. THE STATE.

HUNSTEIN, Justice.

Appellant Samantha Latrice Jessie was convicted of the murder of her newborn son and the concealment of his death.  Jessie appeals the denial of her motion for new trial, asserting that the evidence was insufficient, her trial counsel rendered ineffective assistance, and her life sentence constitutes cruel and unusual punishment.  Finding no error, we affirm.[1]

Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established as follows.  Sometime in 2008, Jessie became pregnant with her third child.  Shortly prior to this pregnancy, Jessie had voluntarily relinquished her parental rights to her second child, then four months

[1] The crimes were committed on December 17, 2008.  In June 2009, Jessie was indicted by a Terrell County grand jury on one count of malice murder and one count of concealing the death of another.  At the conclusion of a jury trial held March 1-3, 2010, Jessie was convicted on both counts and sentenced to life imprisonment for murder and a concurrent term of ten years for the latter crime.  Through trial counsel, Jessie filed a timely motion for new trial, which, through new appellate counsel, was amended on June 26, 2012.  Following a hearing, the trial court denied the new trial motion on April 9, 2013.  On April 10, 2013, Jessie filed a notice of appeal.  The appeal was docketed to the September 2013 term of this Court and was thereafter submitted for decision on the briefs.

old, who had extensive medical needs and who, child welfare officials determined, had essentially been abandoned at a Macon hospital where he was being treated. When Jessie became pregnant again, she feared disapproval from her family and attempted to hide her pregnancy. Though several of Jessie's family members suspected that she was pregnant, Jessie steadfastly denied it.

On the night of December 17, 2008, Jessie gave birth to a baby boy on the floor of a bedroom in her grandmother's house, while her toddler daughter was asleep in the same room and her grandmother was present elsewhere in the house. Jessie did not reveal to anyone that she had given birth. Though Jessie's grandmother had overheard Jessie's moans and what she believed were a baby's cries that night, she did not enter Jessie's bedroom to investigate and did not ask Jessie about it. The next day, Jessie's grandmother relayed her suspicions to a relative, who notified authorities.

On December 23, 2008, GBI investigators questioned Jessie. Jessie first maintained that she had not been pregnant. On further questioning, Jessie admitted her pregnancy and claimed that she had miscarried and placed the fetus in a dumpster near her grandmother's home. The agents then searched the dumpster Jessie had identified, finding no traces of a fetus. On the following

2

day, in another interview, Jessie finally admitted to giving birth to a live baby boy, wrapping him tightly in a quilt that covered his face, and placing the bundle in a corner of the bedroom behind a bookshelf, where she left it. The next day, she placed the bundle in her grandmother's lit kitchen fireplace, where it was consumed by fire.

In their subsequent search of Jessie's grandmother's home, GBI agents discovered, among other items of evidence, a pile of ash and debris in the back yard, from which they recovered numerous newborn-sized bones and bone fragments. A forensic anthropologist later determined that these bones and fragments together constituted approximately 60% of the skeleton of a single human infant. An obstetrician-gynecologist who examined Jessie shortly after her confession opined that Jessie had recently given birth.

1. The evidence was clearly sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Jessie was guilty of the malice murder of her newborn son and the subsequent concealment of his death. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See also OCGA § 16-5-1 (malice murder); OCGA § 16-10-31 (concealing the death of another); White v. State, 287 Ga. 713 (1) (b), (c) (699 SE2d 291) (2010). Though Jessie

3

maintains that the State failed to prove the requisite intent to establish malice murder, "[i]t is for a jury to determine from all the facts and circumstances whether a killing is intentional and malicious." White, 287 Ga. at 715 (1) (b). Here, the evidence was easily susceptible to a finding that Jessie, who had previously given birth to two babies, clearly understood and intended that wrapping her unwanted newborn baby in a quilt that covered his face, stashing him in a corner for hours, and then incinerating him in a fireplace would cause his death.

2. Jessie contends that her trial counsel rendered ineffective assistance in several respects. To establish ineffective assistance of counsel, a defendant must show that her trial counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other. See Green v. State, 291 Ga. 579 (2) (731 SE2d 359) (2012). To prove deficient performance, one must show that her attorney

4

"performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Id. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. Id.

(a) Jessie first asserts that trial counsel performed deficiently by failing to request jury instructions on the lesser included offenses of voluntary manslaughter and involuntary manslaughter. Decisions about which jury charges to request are classic matters of trial strategy. See Reid v. State, 286 Ga. 484 (3) (b) (690 SE2d 177) (2010). Here, Jessie's trial counsel testified at the new trial hearing that, after consultation with Jessie, he had opted to pursue an "all or nothing" strategy, believing that the jury "would have to really reach" to convict her of malice murder. Counsel further testified that he did not believe the evidence supported a finding of "serious provocation" as would be required to justify a voluntary manslaughter charge. See OCGA § 16-5-2 (a). Counsel's

5

calculus on these issues was not patently unreasonable, and his conduct in this regard did not constitute deficient performance.

(b) Jessie next contends that trial counsel performed deficiently by failing to seek a directed verdict on the malice murder charge. However, given that the evidence was sufficient to sustain Jessie's conviction for malice murder, any motion for directed verdict would have failed, and trial counsel's failure to make such a motion thus did not constitute deficient performance. Nelson v. State, 283 Ga. 119 (2) (a) (657 SE2d 201) (2008).

(c) Jessie also claims that trial counsel performed deficiently in failing to challenge the admission of evidence regarding Jessie's voluntary surrender of parental rights. To the extent Jessie argues that trial counsel should have objected on the basis that the State failed to provide the foundation required to admit this evidence as proof of a similar transaction, see Williams v. State, 261 Ga. 640 (2) (409 SE2d 649) (1991), we conclude that such evidence was not offered as a similar transaction. Rather, the evidence was offered as proof pertaining to Jessie's possible motive in concealing her pregnancy. The State thus had no need to establish the factors required for admission of similar transaction evidence, and trial counsel did not perform deficiently by failing to

6

object on this basis.

To the extent Jessie also asserts that trial counsel should have objected to the level of detail elicited by the prosecutor from its witnesses regarding Jessie's surrender of parental rights, we cannot conclude that counsel's conduct was so objectively unreasonable in this regard as to constitute deficient performance. Trial counsel testified that his strategy in this respect was to attempt to portray Jessie's surrender of rights as a responsible decision on her part to enable her son to gain access to better medical care than she herself would be able to provide for him. This strategy was reflected in counsel's cross-examination of the Department of Family and Children Services ("DFACS") caseworker who oversaw the surrender of rights, and who conceded that Jessie's decision "was probably in the [child's] best interest." Counsel also testified that he did not object during this witness' testimony because he feared giving the jury the impression that the defense had something to hide. We do not find this strategy unreasonable, and we therefore find no deficient performance on the part of trial counsel in this respect. See, e.g., McKenzie v. State, 284 Ga. 342 (4) (e) (667 SE2d 43) (2008) (declining to find deficient performance where counsel's decisions not to object to certain testimony were strategic and reasonable);

7

Kilpatrick v. State, 276 Ga. 151 (2) (575 SE2d 478) (2003) (same).

3. Because the evidence authorized Jessie's conviction for malice murder, she was properly sentenced to life imprisonment under OCGA § 16-5-1 (d). Contrary to Jessie's contention, the fact that she was 22 years old at the time her life sentence was imposed does not render her sentence cruel and unusual. See Gandy v. State, 290 Ga. 166 (4) (b) (718 SE2d 287) (2011) (rejecting contention that life sentence imposed on 20-year-old murder convict implicated Eighth Amendment).

Judgment affirmed. All the Justices concur.

Decided January 21, 2014.

Murder. Terrell Superior Court. Before Judge Lane.

Joseph C. Timothy Lewis, for appellant.

T. Craig Earnest, District Attorney, Ronald S. Smith, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Andrew G. Sims, Assistant Attorney General, for appellee.