**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 28, 2018**

# In the Court of Appeals of Georgia

A17A1599. BYRD v. THE STATE.

REESE, Judge.

A jury found Archie Byrd, III, guilty of six counts of trafficking of persons for sexual servitude.[1] He appeals from the trial court's denial of his motion for new trial, arguing that he received ineffective assistance of counsel and that the trial court erred in failing to merge all of his convictions into a single count for sentencing purposes. For the reasons set forth, infra, we affirm.

---

[1] OCGA § 16-5-46 (c) (2012) ("A person commits the offense of trafficking a person for sexual servitude when that person knowingly subjects another person to or maintains another person in sexual servitude or knowingly recruits, entices, harbors, transports, provides, or obtains by any means another person for the purpose of sexual servitude.").

Viewed in the light most favorable to the jury's verdict,[2] the evidence showed the following facts. In the early months of 2012, a 17-year-old woman met the Appellant through a friend. Shortly thereafter, the Appellant asked the young woman (hereinafter, "the victim") to work for him as a prostitute. The victim needed money to pay her phone bill, so she allowed the Appellant to take her from Atlanta to a hotel in Clarke County to meet a man and have sex with him for money. According to the victim, she did not want to become a prostitute and intended the incident to be a one-time event. However, the Appellant convinced her to work for him on a regular basis for the next few months. He placed several ads with her picture on prostitution websites to solicit clients, and, when clients called requesting her services, he drove her from Atlanta to Athens, Gainesville, and other places to meet the clients. During this time, the Appellant became increasingly abusive to the victim to the point where she was afraid to leave.

In early April 2012, however, the victim told the Appellant that she was not feeling well and could not work for him as a prostitute. The Appellant got angry and abandoned her at a bus stop, where she met two strangers, who then contacted the police. A police officer took her to the station, where she waited until her mother

---

[2] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

picked her up to take her back home to Atlanta. The victim only stayed at home one night, however, because the Appellant convinced her to come back and work for him again.

A few days later, on April 10, 2012, the Appellant drove the victim from Atlanta to a Clarke County hotel to meet a "client" who had responded to a website advertisement. Unbeknownst to either the Appellant or the victim, the "client" was actually an agent with the United States Department of Homeland Security ("USDHS"), which was working with the Human Trafficking Unit of the Georgia Bureau of Investigation ("GBI") on an undercover operation to rescue juveniles who are being sexually exploited. The victim arrived at the hotel room to meet the "client," and she agreed to provide him with sexual services. As soon as the victim accepted money from the "client," however, the "client" signaled to other agents, who entered the room and interviewed the victim. The initial encounter between the "client" and the victim, and the interview that followed, were video-recorded. The recording was played for the jury at trial.

As part of the sting operation, other government agents were posted outside the hotel and observed the victim arrive in a car that was driven by the Appellant and owned by his uncle. After the Appellant dropped the victim off at the hotel and drove

3

away, agents followed the vehicle and attempted to stop it. The Appellant did not stop, however, and the agents lost sight of the car. The agents later found the car after it had been wrecked and abandoned. The Appellant and a female passenger had escaped, although the passenger was later found and arrested.

Meanwhile, after questioning the victim at the Clarke County hotel, GBI agents took her back to Atlanta and placed her in a group home. The next day, however, the victim left with the Appellant, and they eventually traveled to California, where she continued to work as a prostitute.

On April 12, 2012, the State obtained a warrant for the Appellant's arrest. Almost two years later, in February 2014, the Appellant was arrested on the warrant and held without bail in the Athens-Clarke County Jail. The State charged him with one count of trafficking of a person for the purpose of sexual servitude.[3]

On September 3, 2014, the State obtained a material witness warrant for the victim. A few days later, law enforcement officers took her into custody pursuant to the warrant, then kept her in jail to ensure that she did not leave the area and that she was available for questioning prior to the Appellant's trial. During custodial interviews by law enforcement officers, the victim provided significantly more

---

[3] See OCGA § 16-5-46 (c) (2012).

information than she had during the April 2012 interview; the new information implicated the Appellant in numerous crimes. Based upon these disclosures, the State re-indicted the Appellant, charging him with three counts of trafficking the victim for sexual servitude through the use of coercion and three related counts of committing those same crimes without coercion.[4]

At the Appellant's trial, the victim identified the Appellant as the man who had posted the website ads offering her sexual services to prospective clients, driven her to meet clients, and taken the money she received from those clients. A GBI agent testified that the agency had contacted the website operators and confirmed that the Appellant had placed the ads at issue. Agents had also obtained a search warrant for the hotel where the victim was staying with the Appellant; the Appellant's name was on the hotel's registration form. Inside the room, agents found a handgun that belonged to the Appellant, as well as personal items belonging to him and the victim. Personal items belonging to the Appellant and the victim were also found in the car that had been driven to the hotel by the Appellant on April 10, 2012.

---

[4] See OCGA § 16-5-46 (c) (2012) (trafficking a person for sexual servitude); see also OCGA § 16-5-46 (a) (6) (A) (2012) (defining "sexual servitude" as sexually explicit conduct induced or obtained by coercion or deception or from a person under 18 years of age).

The jury convicted the Appellant on all six counts of the indictment. The trial court sentenced the Appellant to three concurrent life sentences on Counts 1, 3, and 5 (trafficking for sexual servitude with coercion), and merged the convictions on Counts 2, 4, and 6 (trafficking for sexual servitude without coercion) into the related odd-numbered counts for the purpose of sentencing. After the trial court denied the Appellant's motion for new trial, the Appellant filed the instant appeal.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.[5] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[6]

With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

---

[5] *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[6] *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003) (citations and punctuation omitted).

1. The Appellant contends that his trial counsel provided ineffective assistance when, during consideration of a proposed plea deal, counsel incorrectly advised him on his eligibility for parole if he were to be convicted on the charges as indicted. He argues that he relied on counsel's misinformation when he rejected the proposed plea deal and that, if he had been properly advised, he would have accepted the deal instead of going to trial.

> The two-part test of *Strickland v. Washington* ordinarily applies to claims of ineffective assistance of counsel in the plea process. Thus, to prevail on such a claim, the defendant must demonstrate both that trial counsel's performance was unprofessional, and that but for counsel's errors, the outcome of the proceedings would have been different. [If] the defendant demonstrates that counsel's representation in the plea process fell below an objective standard of reasonableness, the inquiry turns to whether the defendant has demonstrated the required prejudice.[7]

"[T]he proper question at the prejudice step is whether [the Appellant] demonstrated that, but for counsel's deficient performance, there is a reasonable probability that he would have accepted the State's plea offer."[8] However, "[i]f an appellant fails to meet

---

[7] *Cleveland v. State*, 285 Ga. 142, 144-145 (674 SE2d 289) (2009) (punctuation and footnotes omitted).

[8] Id. at 145 (footnote omitted).

his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong."[9]

The record shows that, on September 24, 2014, the State notified the Appellant that it intended to seek a life sentence if the Appellant was convicted of the charged offenses at trial. On October 8, 2014, the State e-mailed the Appellant's counsel and offered the Appellant a sentence of 50 years, with 20 years to serve, in exchange for his guilty plea. The e-mail stated that the plea offer expired at noon on October 15, 2014. Counsel informed Byrd about the plea offer, but Byrd did not accept the offer prior to the deadline, nor did he make a counter-offer to the State for a lesser sentence prior to trial.

The Appellant argues that his counsel's performance was deficient because counsel allegedly misinformed him that, if he was convicted at trial and given a life sentence, he would be eligible for parole in 14 years. According to the Appellant, after he was convicted and sentenced to life imprisonment, he learned that he would not be eligible for parole for 30 years, pursuant to OCGA § 17-10-6.1.

---

[9] *Harris v. State*, 334 Ga. App. 456, 459 (779 SE2d 692) (2015) (footnote omitted).

8

Subsection (a) of OCGA § 17-10-6.1 lists seven specific "serious violent felon[ies]," and subsection (c) (1) provides that, upon a conviction and life sentence for one of those listed felonies, the convicted defendant is not eligible for parole until he or she has served a minimum of 30 years in prison. A plain reading of the statute shows, however, that the offense of "trafficking a person for sexual servitude" under OCGA § 16-5-46 (c) is not included in the list of serious violent felonies in OCGA § 17-10-6.1 (a). The Appellant has failed to cite to any evidence in the record or any authority that shows that OCGA § 17-10-6.1 applies to his life sentence in this case.

Nor has the Appellant cited to any *other* authority or competent evidence that supports his claim that he will not be eligible for parole until he has served 30 years in prison. Although the Appellant testified during the motion for new trial hearing that, after he was convicted, a probation officer and a counselor at the prison told him that he would not be eligible for parole for 30 years, the trial court properly sustained a hearsay objection to the statements and ruled that they were inadmissible to prove that fact. Further, to the extent the Appellant relies on a "grid" published on the Internet by Georgia's Board of Pardons and Paroles, the grid is not included in the appellate record, nor does the record show that the Appellant tendered an admissible

9

copy of the grid as evidence in the court below. Therefore, such evidence cannot be considered on appeal.[10]

In its order denying the Appellant's motion for new trial, the court found that "[t]rial counsel did not misinform [the Appellant] as to his parole eligibility" if he rejected the plea deal, was convicted at trial, and was sentenced to life imprisonment. The Appellant has failed to demonstrate that the court's finding was erroneous, so he cannot meet his burden of proving that counsel provided deficient representation during the plea negotiations. Therefore, it is unnecessary for this Court to address the issue of prejudice to the Appellant,[11] as he cannot prevail on this ineffective assistance claim as a matter of law.

2. The Appellant contends that his counsel provided ineffective assistance by failing to request a jury instruction on the crime of "pimping"[12] as a lesser-

---

[10] See *Leathers v. Timex Corp.*, 174 Ga. App. 430, 431 (2) (330 SE2d 102) (1985) ("The burden is on the party alleging error to show it affirmatively by the record. A brief cannot be used in lieu of the record for adding evidence to the record.") (citations and punctuation omitted); see also *Moss v. State*, 194 Ga. App. 181 (390 SE2d 268) (1990) ("[W]e cannot consider factual allegations in the brief that are not supported by the record.") (citation omitted).

[11] See *Harris*, 334 Ga. App. at 459.

[12] See OCGA § 16-6-11 (2012) ("A person commits the offense of pimping when he or she performs any of the following acts: (1) Offers or agrees to procure a

included offense of trafficking a minor for sexual servitude without the use of coercion.[13] According to the Appellant, the same evidence supported a conviction on either offense and, if the jury had been given an instruction on pimping, it may have convicted him of pimping instead of on the sexual trafficking charges. He argues that

prostitute for another; (2) Offers or agrees to arrange a meeting of persons for the purpose of prostitution; (3) Directs or transports another person to a place when he or she knows or should know that the direction or transportation is for the purpose of prostitution; (4) Receives money or other thing of value from a prostitute, without lawful consideration, knowing it was earned in whole or in part from prostitution; or (5) Aids or abets, counsels, or commands another in the commission of prostitution or aids or assists in prostitution where the proceeds or profits derived therefrom are to be divided on a pro rata basis."); see also OCGA § 16-6-9 ("A person commits the offense of prostitution when he or she performs or offers or consents to perform a sexual act, including but not limited to sexual intercourse or sodomy, for money or other items of value.").

[13] For the purpose of addressing this alleged error, this Court will assume, without deciding, that the offense of pimping a minor is, in fact, a lesser-included offense of trafficking a minor for sexual servitude without the use of coercion. See OCGA §§ 16-1-6 ("An accused may be convicted of a crime included in a crime charged in the indictment or accusation. A crime is so included when: (1) It is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged; or (2) It differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission."); 16-1-7 (a) ("When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if: (1) One crime is included in the other; or (2) The crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.").

11

he was prejudiced by this failure because, if the jury had convicted him of pimping instead of sexual trafficking, he would have received a lighter sentence.[14]

"An appellate court evaluates counsel's performance from counsel's perspective at the time of trial. As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel."[15] It is axiomatic that "[d]ecisions about which jury charges to request are classic matters of trial strategy."[16]

---

[14] Compare OCGA § 16-6-13 (b) (1) (2012) (A person convicted of pimping a minor that is 16 or 17 years old shall be sentenced to a period of five to twenty years of imprisonment, a fine of between $2,500 and $10,000, or both.), with OCGA § 16-5-46 (f) (2) (2012) (A person convicted of trafficking a minor for sexual servitude without the use of coercion shall be sentenced to a period of ten to twenty years of imprisonment, a fine not to exceed $100,000, or both. The trafficking statute also provided that the allowable sentence for a conviction for trafficking a minor *with coercion* for sexual servitude was 25 to 50 years or life imprisonment, a fine not to exceed $100,000, or both.).

[15] *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001) (citations and punctuation omitted).

[16] *Jessie v. State*, 294 Ga. 375, 377 (2) (a) (754 SE2d 46) (2014) (citation omitted). See also *Reid v. State*, 286 Ga. 484, 487 (3) (b) (690 SE2d 177) (2010) ("Decisions about which jury charges to request are strategic and provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them.") (citation and punctuation omitted).

In this case, the Appellant's trial counsel specifically testified during the motion for new trial hearing that he had made a strategic decision not to request a jury instruction on pimping as a lesser-included offense. According to counsel, he had decided that his best chance to obtain a full acquittal on all the charges was to argue to the jury that the Appellant had simply provided assistance to the victim while she earned some money as a prostitute. During his opening statement and closing arguments, counsel asserted that state and federal law enforcement agencies, in an effort to address the serious crime of individuals forcing children into sexual servitude, had conducted a "sting operation" in the hope of arresting such an individual. So, when the agents encountered the 17-year-old victim in this case, they arrested the man who had been helping her, the Appellant, so their sting operation did not "come up empty." Counsel told the jury that the State then overcharged the Appellant under the wrong statute by charging him with sexual trafficking, even though he was, at most, guilty of acting as a pimp for a troubled young woman who had made some bad choices and was voluntarily prostituting herself. Counsel further argued that, because the State had failed to prove that the Appellant had committed the felonies as indicted, the jury had no choice but to acquit him.

In explaining his strategy during the motion for new trial hearing, counsel testified that, because the evidence presented was sufficient to support a pimping conviction, he believed that requesting an instruction on pimping as a lesser-included offense would have eliminated any chance of obtaining a full acquittal on all charges for the Appellant. Further, requesting a pimping instruction would not only have undermined his argument that the State had overcharged the Appellant, but it would have given the jury the opportunity to acquit the Appellant on the sexual trafficking charges, but still find him guilty of pimping. According to counsel, this potential outcome outweighed any benefit to the Appellant, because pimping carried a substantial sentence that was comparable to that for the crime of trafficking for sexual servitude without coercion.[17] Counsel's hearing testimony supports a finding that his decision to not request a pimping jury instruction was an informed strategic choice that was consistent with the Appellant's claim that he was innocent of the crimes as

---

[17] See footnote 14, supra.

14

indicted.[18] Consequently, the Appellant has failed to show that counsel's strategic decision was so patently unreasonable that it constituted deficient performance.[19]

Moreover, the Appellant has failed to show that he was prejudiced by his counsel's failure to request a jury instruction on pimping as a lesser-included offense to the counts charging him with trafficking for sexual servitude without the use of coercion. Not only did the jury find the Appellant guilty on the three trafficking without coercion counts, but it *also* found the Appellant guilty on the three related counts charging the greater offense, i.e., trafficking the victim for sexual servitude *through the use of coercion.* Thus, the Appellant has failed to meet his burden of showing that there is a reasonable possibility that the jury would have acquitted him on *all* of the indicted offenses and, instead, convicted him *only* of pimping if his counsel had requested a jury instruction on pimping as a lesser-included offense.[20]

---

[18] See *Davis v. State*, 287 Ga. App. 786, 789 (2) (653 SE2d 104) (2007).

[19] See *Jessie*, 294 Ga. at 377 (2) (a) (Because counsel believed that the State failed to prove a crime as indicted, it was not patently unreasonable to forego a jury instruction on a lesser-included offense and, instead, pursue an "all or nothing" strategy, where the jury had to either acquit the defendant or convict her of the crimes as indicted.); *Ingram v. State*, 317 Ga. App. 606, 608 (2) (732 SE2d 456) (2012) (same).

[20] See *Bradley v. State*, 322 Ga. App. 541, 546 (3) (a) (i) (745 SE2d 763) (2013) (The State charged the Appellant with concurrently committing armed robbery

15

Consequently, we conclude that the trial court did not err in finding that the Appellant had failed to demonstrate ineffective assistance of counsel.

3. The Appellant contends that the trial court erred in imposing separate sentences on Counts 1, 3, and 5, instead of merging them and imposing a single life sentence.[21] He argues that the court was only authorized to impose a single sentence, because the counts differed only as to the dates the offenses were committed, the dates were not material to the charges, and the dates all fell within the applicable statute of limitation. This argument is without merit.

and aggravated assault through the use of the same deadly weapon. The court instructed the jury on theft by intimidation as a lesser-included offense to armed robbery. On appeal, the Appellant contended that his counsel was ineffective for failing to request a charge on simple assault as a lesser-include offense to aggravated assault. This Court held that, because the jury found the Appellant guilty of armed robbery, the jury must have believed that he had used the deadly weapon and, as a result, rejected the lesser-included offense as to that crime. Thus, the Appellant failed to show a reasonable probability that the jury would have convicted him of simple assault as a lesser-included offense instead of aggravated assault with the deadly weapon.). See generally *Loren v. State*, 268 Ga. 792, 796 (3) (493 SE2d 175) (1997) (The State indicted the Appellant for malice murder and felony murder. The Appellant argued that the trial court erroneously failed to instruct the jury on cruelty to children as a lesser-included offense of the felony murder count. However, because the jury found the Appellant guilty of the greater offense, i.e., malice murder, the court's erroneous failure to give the cruelty to children instruction was harmless because cruelty to children was not a lesser-included offense of malice murder.).

[21] As noted above, the trial court merged the sentences on Counts 2, 4, and 6 into Counts 1, 3, and 5, respectively.

"Where an averment in one count of an accusation or indictment distinguishes it from all other counts, either by alleging a different set of facts *or* a different date which is made an essential averment of the transaction, the State may on conviction punish the defendant for the various crimes."[22] Thus, when "the averments of each count refer to a different period of time," each period of time "is made an essential averment of the transaction, and each count of the indictment is distinguishable" and may be punished separately.[23]

Here, Counts 1, 3, and 5 of the indictment each alleged that the Appellant trafficked the victim for sexual servitude on different dates: between January 1 and April 1, 2012; between April 5 and 8, 2012; and on April 10, 2012. None of these dates or time periods overlap, and each count was supported by specific, distinguishable, and independent evidence at trial.[24] It follows that the record does not support a finding that the Appellant was convicted on more than one count for the

---

[22] *Simmons v. State*, 271 Ga. App. 330, 332 (2) (609 SE2d 678) (2005) (citation and punctuation omitted; emphasis in original).

[23] *Salley v. State*, 199 Ga. App. 358, 362 (4) (405 SE2d 260) (1991) (citation and punctuation omitted); see *Simmons*, 271 Ga. App. at 332 (2).

[24] See *Simmons*, 271 Ga. App. at 332 (2).

same actions committed on a single day or during the same period of days, as would be required for the convictions to merge as a matter of fact.[25]

Moreover, OCGA § 16-5-46 (i) (2012) specifically stated that "[e]ach violation of this Code section shall constitute a separate offense and shall not merge with any other offense." In considering similar language in subsection (m) of OCGA § 16-15-4,[26] this Court concluded that, "[u]nder the plain language of this provision, the Legislature determined that any crime committed in violation of OCGA § 16-15-4 is a separate offense which does not merge with another separate offense under the Code section or with any predicate offense listed in the Code section."[27] We reach a similar conclusion as to the plain language of OCGA § 16-5-46 (i).

Consequently, we conclude that the trial court did not err in imposing separate sentences on Counts 1, 3, and 5.[28]

---

[25] See *Salley*, 199 Ga. App. at 362 (4).

[26] OCGA § 16-15-4 prohibits participation in criminal gang activity, and subsection (m) provides that "[a]ny crime committed in violation of this Code section shall be considered a separate offense."

[27] *Nolley v. State*, 335 Ga. App. 539, 545 (2) (782 SE2d 446) (2016).

[28] See *Simmons*, 271 Ga. App. at 332 (2) (Each count of the indictment alleged that the defendant sold cocaine on a different occasion, and each count was supported by a different set of facts. Therefore, the trial court did not err in imposing separate

18

*Judgment affirmed. Miller, P. J., and Doyle, P. J., concur.*

---

sentences on each count.); *Salley*, 199 Ga. App. at 362 (4). But cf. *Daniels v. State*, 320 Ga. App. 340, 343-344 (2) (739 SE2d 773) (2013) (The State charged the defendant with several acts of child molestation; each count of the indictment alleged that an act occurred "on or about" a specified time period, with "the exact dates being unknown." The trial court instructed the jury that the dates alleged in the indictment were not material averments. As a result, the jury was authorized to find the defendant guilty for actions falling outside the date ranges given in each count. This Court ruled that, under these circumstances, the trial court erred by failing to merge any counts that differed only as to the time periods alleged.).