303 Ga. 700
FINAL COPY

S18A0003. THOMAS v. THE STATE.

BLACKWELL, Justice.

Maurice Thomas was tried by an Emanuel County jury and convicted of murder and other crimes in connection with the fatal shooting of Eugene Grier. Thomas appeals, contending that he was denied the effective assistance of counsel when his lawyer opened the door and failed to object to evidence of a statement made by his co-defendant, which, Thomas says, violated Bruton v. United States, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968).[1] We affirm.[2]

---

[1] In Bruton, the United States Supreme Court held that the admission of a nontestifying co-defendant's confession — in which the co-defendant admitted to committing the crime *with the defendant* — violated the defendant's constitutional right to confrontation, notwithstanding a limiting jury instruction. See 391 U. S. at 136-137. See also Hanifa v. State, 269 Ga. 797, 803 (2) (505 SE2d 731) (1998).

[2] Grier was killed on August 29, 2010. On November 15, 2010, an Emanuel County grand jury indicted Thomas and co-defendant Carlton Thomas, charging them with malice murder, felony murder, aggravated assault, terroristic threats, and four counts of possession of a firearm during the commission of a felony. Thomas and Carlton were tried in July 2011, and the jury found Thomas guilty of malice murder, aggravated assault, terroristic threats, and three counts of possession of a firearm during the commission of a felony. Carlton was acquitted on all counts. The trial court sentenced Thomas to imprisonment for life for murder, 20 years for aggravated assault, five years for terroristic threats, and five years for each of the firearm possession counts. Still represented by his trial lawyer, Thomas filed a

1. Viewed in the light most favorable to the verdicts, the evidence shows that Grier and his girlfriend, Janice Wadley, operated a small club known as "Janice's Place." Early on the morning of August 29, 2010, Grier and Wadley were working at the club and preparing to close when a group of young people came in and ordered food. Grier and Wadley prepared the order in the kitchen and then came out to the front counter with the food. As Grier stood there, Thomas approached the counter and shot him in the head, causing him to fall to the floor. Thomas then walked up to Wadley, pointed a gun to her face, and said, "I'm fixing to kill you." Thomas attempted to fire the gun, but he was unable to do so for some reason (perhaps because the gun jammed). Thomas was enraged, but his sister pulled on his shirt and implored him not to shoot, and he left the club soon thereafter.

---

motion for new trial, which was denied. Thomas did not appeal at that time. Later, new counsel appeared for Thomas, and Thomas was permitted to file a second out-of-time motion for new trial. Following a hearing, that motion was denied on December 15, 2016, and Thomas filed a notice of appeal. After the appeal was docketed in this Court, Thomas filed a pro se motion to represent himself on appeal, and we remanded the case for a hearing on the question of representation. At that hearing, Thomas changed his mind and withdrew the request to represent himself. The record was transmitted back to this Court, and the appeal was docketed to the term beginning in December 2017 and submitted for a decision on the briefs.

Wadley testified at trial that she had known Thomas since he was a little boy, and she identified him in the courtroom as the shooter. Two other eyewitnesses also testified that Thomas was the shooter. One of these eyewitnesses had known Thomas and his co-defendant (and cousin) Carlton for many years. Before the shooting, she said, Thomas was outside the club, angry and searching for a gun. After Thomas entered the club, this eyewitness saw Carlton pass a handgun to Thomas, she watched Thomas shoot Grier, and she then observed Thomas returning the gun to Carlton. This eyewitness admitted that she was a crack cocaine addict at the time and stole items from the club in the chaos that followed the shooting. The second eyewitness testified that he too saw Thomas shoot Grier, and he identified Thomas in the courtroom as the shooter. The second eyewitness admitted that he was a drug user as well, and he conceded that Grier was his friend and mentor, explaining that he did odd jobs for Grier and Wadley for food and rent.

Thomas does not dispute that the evidence is sufficient to sustain his convictions. But consistent with our usual practice in murder cases, we independently have reviewed the record to assess the legal sufficiency of the evidence. We conclude that the evidence presented at trial was sufficient to

3

authorize a rational trier of fact to find beyond a reasonable doubt that Thomas was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. In his sole enumeration of error, Thomas contends that he was denied the effective assistance of counsel when his trial lawyer allowed a GBI agent to testify without objection about a statement made by his co-defendant, which incriminated Thomas. The GBI agent was a witness for the State, and she testified about her investigation of the murder. The State did not ask her on direct examination about any statements made by the co-defendant. But on cross-examination, Thomas's attorney asked what she had discovered during her investigation about the motive for the murder. The GBI agent responded that she had learned "from a couple of people" that, a week or two before the shooting, Thomas and Grier had a disagreement about a small amount of marijuana and that Grier had "pulled a gun on [Thomas]." On re-direct examination, the prosecutor asked, "Now you were asked on cross examination about a prior incident that occurred between [Thomas] and [Grier]. Did [the co-defendant] say anything to you about that incident?" The GBI agent responded:

4

Yes, he did. . . . He told me that Mr. Grier and [Thomas] had an altercation a few weeks ago at a place called Cool Breeze, which is right up the street from where this incident took place, that he was not present but that [Thomas] had told him about it. He said that it was maybe over some marijuana, somebody maybe shorted some marijuana, that Mr. Grier had pointed a gun, and it does say in his face, had pointed a gun in [Thomas]'s face. And then there was some resolution to that, and that he also told me that [Thomas] had — that it had messed him up and that he had been thinking about it a lot and was going to get him back, or that [Thomas] was going to get [Grier] back, and that it was to the point where he was actually dreaming about it.

Thomas's lawyer did not object to this testimony.

To obtain relief on a claim of ineffective assistance of counsel, a defendant must show both that his lawyer's performance was deficient and that this deficient performance prejudiced the defense. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). An attorney performs deficiently under Strickland if he does so in an "objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Jessie v. State, 294 Ga. 375, 377 (2) (754 SE2d 46) (2014) (citation and punctuation omitted). Prejudice is shown by demonstrating "a reasonable probability sufficient to undermine confidence in the outcome that, but for counsel's alleged unprofessional errors, the result of

the proceeding would have been different." Miller v. State, 285 Ga. 285, 286 (676 SE2d 173) (2009) (citation and punctuation omitted). "If the defendant fails to satisfy either the 'deficient performance' or the 'prejudice' prong of the Strickland test, this Court is not required to examine the other." Jessie, 294 Ga. at 377 (2). See also Jones v. State, 290 Ga. 576, 578 (3) (722 SE2d 853) (2012).

Assuming that Thomas's lawyer performed deficiently, we cannot say that, even if the GBI agent's testimony had been excluded, there is a reasonable probability that the outcome of Thomas's trial would have been different. First, the GBI agent's testimony was not the only evidence of motive; similar evidence was also introduced through a jailhouse informant, who testified that the co-defendant told him that, "a couple of days" before the shooting,

> [Thomas] had a[n] altercation with a fellow about quantity of some drugs or something, and the fellow actually had pulled a gun on him. And then a couple of days later, I don't know if they were riding to find him or however it went, but, you know, they come across him and he had a gun and they had another altercation and he said [Thomas] shot him.

See Battle v. State, 301 Ga. 694, 700 (4) (804 SE2d 46) (2017) ("A Bruton violation may not be prejudicial when the complained-of statements are substantially similar to evidence properly admitted at trial."). Thomas does not

6

claim that the jailhouse informant's testimony was inadmissible, and in fact, the co-defendant's statements to the informant were not precluded under Bruton because they were not testimonial. See Billings v. State, 293 Ga. 99, 104 (4) (745 SE2d 583) (2013) (Bruton "does not apply to *non-testimonial* out-of-court statements made by [non-testifying] co-defendant" (emphasis in original)).[3]

Moreover, the evidence against Thomas was very strong, as three eyewitnesses — Wadley and two others — testified unequivocally that they saw him shoot Grier, and their testimonies were largely consistent as to how the shooting occurred. While Thomas contends that the eyewitnesses suffered from credibility issues, it is highly unlikely that the jury would have completely discredited all three but for the more detailed evidence of motive provided by the GBI agent. After all, there was no other suspect in the shooting — to the extent the co-defendant was involved at all (he was acquitted), no one suggested

---

[3] A co-defendant's statement to a jailhouse informant may be considered testimonial if the informant was a "government agent" in that he was "acting under the instructions of the government." Rai v. State, 297 Ga. 472, 478 (3) (775 SE2d 129) (2015) (citation and punctuation omitted). But "an informant may be classified as a government agent only if there is both (1) an agreement between the informant and government authorities to exchange incriminating information for payment, lenient treatment, or some other benefit and (2) some action by the informant designed deliberately to elicit incriminating information." Id. at 478-479. There is no indication here that the jailhouse informant who testified in this case was a government agent.

that he was the triggerman. It was undisputed that the killing occurred in the presence of multiple eyewitnesses. And the defense has not presented any theories as to why those eyewitnesses would want to blame Thomas for the murder while concealing the real killer's identity. In sum, there is no reasonable probability that any Bruton error affected the outcome of the trial, so Thomas has failed to show ineffective assistance of counsel. See Battle v. State, 301 Ga. at 700 (4) ("[R]eversal of a defendant's convictions for [a Bruton] violation in the context of a claim of ineffectiveness of trial counsel is not warranted if given the strength of the evidence against the defendant, there is no reasonable probability that the outcome of the defendant's trial would have been more favorable had defense counsel made a Bruton objection which was sustained.").

Judgment affirmed. All the Justices concur.

Decided May 21, 2018.

Murder. Emanuel Superior Court. Before Judge Reeves.

Tyler R. Conklin, for appellant.

S. Hayward Altman, District Attorney, John A. Fitzner III, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Aimee F. Sobhani, Assistant Attorney General, for appellee.