## S13A1211. GRIMES v. THE STATE.

(748 SE2d 441)

BLACKWELL, Justice.

Gregory Grimes was tried by a Fulton County jury and convicted of the murder of Bobby Greer. He appeals, contending that the evidence is legally insufficient to sustain his conviction, that he should have been convicted instead of voluntary manslaughter, and that the trial court erred by sentencing him as a recidivist. We find no merit in these claims of error, and we affirm.[1]

1. We begin with the legal sufficiency of the evidence. Viewed in the light most favorable to the verdict, the evidence shows that Grimes fatally stabbed Greer on the morning of January 26, 2003. Earlier that morning, Grimes had visited the home of Terrance Barrow, where Grimes had obtained a knife, changed into dark clothing, and said that he was looking to rob someone. Greer later was seen entering a nearby "drug house," and Grimes was seen walking

---

[1] The crime was committed on January 26, 2003. Grimes was indicted on May 13, 2003 and charged with one count of malice murder, two counts of felony murder, and one count each of aggravated assault and attempted armed robbery. His trial commenced on October 31, 2005, and the jury returned its verdict three days later. As to malice murder, the jury found Grimes guilty of voluntary manslaughter as a lesser included offense. As to the other counts, the jury found Grimes guilty as charged. At first, the trial court sentenced Grimes for both felony murder and voluntary manslaughter, sentencing him to imprisonment for life for felony murder and a concurrent term of imprisonment for twenty years for voluntary manslaughter. The verdict on the other count of felony murder was vacated by operation of law, Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and the aggravated assault and attempted armed robbery merged with the crimes for which Grimes was sentenced. Grimes timely filed a motion for new trial on November 16, 2005, and he amended it on May 18, 2011. Among other things, Grimes complained in his motion that the trial court should not have sentenced him for both felony murder and voluntary manslaughter. The trial court granted the motion as to the sentence for voluntary manslaughter, vacated that portion of the sentence, see Smith v. State, 272 Ga. 874, 881 (6) (c) (536 SE2d 514) (2000), and otherwise denied the motion, all on October 6, 2011. Grimes timely filed his notice of appeal on October 31, 2011, and the case was docketed in this Court for the April 2013 term and submitted for decision on the briefs.

toward the same "drug house," after telling Barrow's girlfriend to keep quiet. Barrow's girlfriend and two individuals walking through the neighborhood subsequently saw Grimes attack Greer.[2] According to one of the walkers, Grimes threw a bottle at Greer and, with a silver blade in his hand, told Greer that "you got my money." That walker heard Greer deny that he had or owed any money, and the walker then saw Grimes strike Greer in the chest. The other walker saw the attack and observed Greer try to deflect the blow. Barrow's girlfriend also saw Greer attempt to fight back, and she observed that Grimes had a shiny object in his hand. Greer eventually walked away from the scene of the fight, but he was later found lying in the street with a fatal stab wound to his chest.

That same morning, investigators found the knife that Grimes had obtained from Barrow's house, and on it, they found Greer's blood. The knife was found stuck in the porch railing of a house next to Barrow's, and a resident of that house explained that he earlier had overheard a conversation between his roommate and Grimes. In the course of that conversation, Grimes said that he had "got[ten] into it" with someone who "was shooting at him," that Grimes "f***ed him up," and that he "should be resting in peace by now." Although gunshot residue was found on Greer's hands, no witness saw Greer with a gun or heard any gunshots, and no weapons were found on or near his body.

Grimes argues on appeal that, because there was some evidence that Greer had a weapon and shot at Grimes before the stabbing — namely, Grimes's own statement and the gunshot residue found on Greer's hands — the State failed to prove beyond a reasonable doubt that he was not justified in stabbing Greer. But the evidence on those points was conflicting. There was evidence that Greer, in fact, had no weapon and did not shoot at Grimes. As we have explained many times before, conflicts in the evidence, questions about the credibility of witnesses, and questions about the existence of justification are for the jury to resolve. See *Hoffler v. State*, 292 Ga. 537, 539 (1) (739 SE2d 362) (2013). See also *Shaw v. State*, 292 Ga. 871, 872 (1) (742 SE2d 707) (2013). In this case, the jury was "free to accept the evidence that the [stabbing] was not done in self-defense and to reject any evidence . . . in support of a justification defense." *McNeil v. State*, 284 Ga. 586, 588 (1) (669 SE2d 111) (2008) (citations and punctuation omitted). Viewing the evidence in the light most favorable to the verdict, as we must, we conclude that the evidence was sufficient to

---

[2] The girlfriend and one of the walkers knew Grimes and identified him by name. The other walker did not know Grimes, but she described the attacker as a man wearing dark clothing.

authorize a rational trier of fact to find beyond a reasonable doubt that Grimes was guilty of the crime of which he was convicted, namely, felony murder in the commission of an attempted armed robbery. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also *Blake v. State*, 292 Ga. 516, 517 (1) (739 SE2d 319) (2013); *Hill v. State*, 291 Ga. 160, 161 (1) (728 SE2d 225) (2012); *Willingham v. State*, 268 Ga. 64, 64 (1) (485 SE2d 735) (1997).

2. We next consider whether the trial court properly entered a judgment of conviction for felony murder, rather than for voluntary manslaughter. In its verdict, the jury found Grimes guilty of both crimes, and that verdict, Grimes contends, means that the "modified merger rule" of *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992), applies and that his conviction for felony murder cannot, therefore, stand. See 261 Ga. at 868 (2) ("Because the jury in this case convicted the defendant of both voluntary manslaughter and felony murder, it must be assumed the jurors found the underlying aggravated assault to be the product of provocation and passion. Thus, only the voluntary manslaughter conviction may stand."). See also *Sanders v. State*, 281 Ga. 36, 37 (1) (635 SE2d 772) (2006) (under modified merger rule, a verdict of guilt as to voluntary manslaughter precludes a conviction for felony murder "if the underlying felony is directed against the homicide victim and is not independent, but rather is an integral part, of the killing" (citations omitted)). But as we explained in *Edge*, the "problem" that the modified merger rule is intended to address "does not exist if the underlying felony is independent of the killing itself, such as burglary, robbery, or even an assault that is directed against someone other than the homicide victim." 261 Ga. at 867, n. 3.

Consequently, we generally do not apply the *Edge* modified merger rule "to any felony murder conviction in which the underlying felony was not the aggravated assault of the murder victim." *Sims v. State*, 265 Ga. 35, 36 (3) (453 SE2d 33) (1995) (citations omitted). See also *Lawson v. State*, 280 Ga. 881, 883 (3) (635 SE2d 134) (2006); *Philmore v. State*, 263 Ga. 67, 70 (5) (428 SE2d 329) (1993). Cf. *Sanders*, 281 Ga. at 37-38 (1) (all three underlying felonies — aggravated assault, aggravated battery, and arson in the first degree — involved the same act of setting the victim afire, caused the death of the victim, and were, therefore, integral to the killing). Indeed, in several cases decided since *Edge*, we have "reiterated that the modified merger rule does not apply when the underlying felony, such as armed robbery, is independent of the killing itself." *Smith v. State*, 272 Ga. 874, 879-880 (6) (a) (536 SE2d 514) (2000) (footnote omitted). Here, the indictment charged Grimes with attempted armed robbery by "brandishing a knife and demanding money," and the evidence supports his conviction for felony murder in the commission of that

attempted armed robbery. Because the underlying felony — that attempted armed robbery — was independent of the killing itself, the modified merger rule of *Edge* does not apply, and Grimes was properly convicted of felony murder. See id. See also *Matthews v. State*, 268 Ga. 798, 804 (7) (b) (493 SE2d 136) (1997).

3. Last, we consider whether Grimes was erroneously sentenced as a recidivist ineligible for parole pursuant to OCGA § 17-10-7 (c),[3] which — both at the time Grimes killed Greer and at the time Grimes was tried and sentenced for that killing — provided that

> any person who, after having been convicted under the laws of this state for three felonies or having been convicted under the laws of any other state or of the United States of three crimes which if committed within this state would be felonies, commits a felony within this state other than a capital felony must, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

OCGA § 17-10-7 (c) (2005). Grimes contends that the State failed to prove that he had been convicted previously of three felonies, noting that the prosecuting attorney stated in his place at sentencing that Grimes had three prior felony convictions, but that no certified copies of those convictions were put forward by the State. This contention is misplaced, however, because Grimes did not object to the statements of the prosecuting attorney or otherwise dispute that he had three prior felony convictions, and we have held before that the statements of a prosecuting attorney can prove prior convictions in the absence of an objection. *Moret v. State*, 246 Ga. 5, 5-6 (3) (268 SE2d 635) (1980). See also *Jones v. State*, 308 Ga. App. 99, 101-102 (2) (706 SE2d 593) (2011).

And in any event, Grimes is not today under any sentence for which he is parole ineligible pursuant to OCGA § 17-10-7 (c). When

---

[3] Grimes also contends that he was erroneously sentenced pursuant to OCGA § 17-10-7 (a), which — at the time of both his crime and his sentencing — required certain recidivists to "be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted." OCGA § 17-10-7 (a) (2005). But in this case, Grimes was convicted of murder, and the *only* sentence that the trial court could have imposed at that time was imprisonment for life, considering that the State did not seek the death penalty. Accordingly, he would have received the same sentence, regardless of whether OCGA § 17-10-7 (a) applied. Any error with respect to OCGA § 17-10-7 (a), therefore, was harmless.

Grimes was sentenced initially, the trial court pronounced a sentence of imprisonment for life for felony murder, and it pronounced a concurrent sentence of imprisonment for twenty years for voluntary manslaughter. As to the latter sentence — but not the former — the trial court pronounced a recidivist sentence and said that Grimes would, therefore, "end up doing every day of that." But the trial court subsequently vacated the conviction and sentence for voluntary manslaughter, see note 1, supra, recognizing correctly that the voluntary manslaughter should have merged into the felony murder. The only sentence that survives today is the sentence for murder, and the trial court never pronounced a sentence pursuant to OCGA § 17-10-7 (c) for that crime,[4] nor does the written sentencing order reflect that Grimes is parole ineligible. This claim of error is, therefore, without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 9, 2013.

*Jennifer A. Trieshmann,* for appellant.
*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Christopher M. Quinn, Arthur C. Walton, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ryan A. Kolb, Assistant Attorney General,* for appellee.

---

[4] In any event, the trial court could not have sentenced Grimes at that time to life without parole for murder pursuant to OCGA § 17-10-7 (c) because subsection (c) then applied only to fourth or subsequent felony convictions "other than [for] a capital felony." See *Funderburk v. State,* 276 Ga. 554, 555 (2) (580 SE2d 234) (2003). Since that time, the General Assembly has amended subsection (c) to remove the exception for capital felonies. See OCGA § 17-10-7 (c) (2013).