## S13A0988. WALLACE v. THE STATE.

(750 SE2d 302)

NAHMIAS, Justice.

Appellant Corey Wallace was found guilty of felony murder and other crimes in connection with the shooting death of Willie Merritt.[1] On appeal, he contends that the trial court's charge prevented the jury from properly considering a voluntary manslaughter verdict on the felony murder counts of his indictment and that his trial counsel provided constitutionally ineffective assistance. We affirm.

1. The evidence presented at trial, viewed in the light most favorable to the verdict, showed the following. On the night of July 4, 2003, Appellant's girlfriend drove him, Demetrius Ransom, and Randall McCrary to the Body Tap, an exotic dance club, where they encountered Merritt and Vincent Jenkins, whom Ransom knew. Ransom ended up playing pool with Merritt. The game started off friendly but became contentious, and a fight broke out. Merritt and several friends, including Jenkins, severely beat Appellant before bouncers intervened and escorted the two groups out of the club separately.

As Appellant sat in his girlfriend's car about to drive away, he caught a glimpse of his face in a mirror and was infuriated by the extent of his injuries. Appellant then loaded his handgun, got out of the car, and chased after Merritt, who ran away. Merritt tripped, and when Appellant caught up with him, Appellant shot him six times, once in the back and then, as Merritt lay on the ground, once in his chest, left arm, right arm, left leg, and right leg. Merritt died of his

---

[1] The crimes occurred on the night of July 4-5, 2003. On June 23, 2006, a Fulton County grand jury indicted Appellant for malice murder, felony murder based on aggravated assault, felony murder based on possession of a firearm by a convicted felon, aggravated assault, and possession of a firearm during the commission of aggravated assault. After a trial from April 24-27, 2007, the jury acquitted Appellant of malice murder but found him guilty of the remaining charges. The trial court sentenced Appellant to serve life in prison for the felony murder based on aggravated assault and a consecutive term of five years on the firearm count; the other convictions merged. On May 21, 2007, Appellant filed a pro se notice of appeal to the Court of Appeals, which transferred the case to this Court on May 7, 2008. On June 2, 2008, this Court dismissed the appeal and remanded the case to the trial court to consider any claims of ineffective assistance of counsel along with a motion for new trial that Appellant's trial counsel had timely filed under the wrong indictment number. Appellant, assisted by new counsel, amended his new trial motion on June 9, 2010, and again on May 19, 2011. After a hearing, the trial court entered an order on September 14, 2011, vacating Appellant's conviction and sentence for felony murder based on aggravated assault and resentencing him to serve life in prison for felony murder based on possession of a firearm by a convicted felon, holding that the enumerations of error related to the vacated count were therefore moot, and otherwise denying the new trial motion. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the April 2013 term and submitted for decision on the briefs.

injuries. Meanwhile, Ransom also got out of the car and pistol-whipped Jenkins.

Appellant and Ransom were jointly indicted for murder and other crimes. Ransom pled guilty to aggravated assault against Jenkins and agreed to cooperate with the State. Ransom testified at trial that he saw Appellant shoot Merritt. Appellant's then-girlfriend testified that she saw him with a pistol during the confrontation; that Ransom did not shoot Merritt; and that she later heard Appellant say that he shot someone. McCrary testified that he saw Appellant chasing Merritt as Merritt ran away, and the forensic evidence indicated that only one gun was fired at the crime scene at the time of the incident.

Viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted and sentenced. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. Relying on *Edge v. State*, 261 Ga. 865, 867 (414 SE2d 463) (1992), Appellant contends the trial court failed to instruct the jury that if it found the aggravated assault that was the underlying felony for one of the felony murder counts was the result of provocation and passion, then the jury could not find him guilty of felony murder and would be authorized, but not required, to find him guilty of voluntary manslaughter. However, *Edge* has been applied only to felony murder convictions in which the underlying felony — typically aggravated assault — was "an integral part of the killing" of the victim, not where the underlying felony was "independent of the killing itself." Id. at 867, n. 3. See, e.g., *Grimes v. State*, 293 Ga. 559, 561 (748 SE2d 441) (2013) (holding that *Edge* did not apply to defendant's felony murder conviction based on the underlying felony of attempted armed robbery, which was not an integral part of the killing). In particular, this Court has twice declined to apply *Edge* to felony murder convictions based on the felony of possession of a firearm by a convicted felon. See *Lawson v. State*, 280 Ga. 881, 883 (635 SE2d 134) (2006); *Sims v. State*, 265 Ga. 35, 36 (453 SE2d 33) (1995).

Appellant's argument that *Edge* undermines his conviction for felony murder based on aggravated assault is moot, because in its order on Appellant's motion for new trial, the trial court vacated that conviction, so the only felony murder conviction Appellant now has is based on the felony of possession of a firearm by a convicted felon. And

as to that conviction, Appellant has given us no persuasive reason to depart from our holdings in *Lawson* and *Sims*.[2]

3. Appellant also contends that his trial counsel provided constitutionally ineffective assistance by failing to impeach Ransom with prior convictions and by not requesting a limiting instruction on Appellant's prior conviction.

> To prevail on this claim, Appellant must show that his trial counsel's performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). "This burden, although not impossible to carry, is a heavy one." *Young v. State*, 292 Ga. 443, 445 (738 SE2d 575) (2013). And the reviewing court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U. S. at 697.

*Boothe v. State*, 293 Ga. 285, 295 (745 SE2d 594) (2013).

(a) Under Georgia's old Evidence Code, which applied when this case was tried, to impeach a witness with a prior conviction, a party was required to offer a certified copy of the conviction unless the opposing party did not object to the lack of a certified copy and the witness admitted the conviction. See *Fuller v. State*, 278 Ga. 812, 815, n. 9 (607 SE2d 581) (2005); *Harwell v. State*, 270 Ga. 765, 768-769 (512 SE2d 892) (1999).[3] Ransom did not admit any prior convictions in his trial testimony, and he did not testify at the motion for new trial hearing. Appellant also did not introduce any certified copies of the prior convictions that he claims trial counsel should have obtained and used to impeach Ransom. Thus, Appellant did not satisfy his burden of showing ineffective assistance in this respect. See *Fuller*, 278 Ga. at 815 (rejecting the defendant's contention that trial counsel provided deficient performance by failing to impeach two witnesses with their prior convictions, where the defendant did not produce certified copies of the prior convictions at the motion for new trial hearing); *Bihlear v. State*, 295 Ga. App. 486, 488-489 (672 SE2d 459) (2009) (holding that the defendant failed to carry his burden to show

---

[2] Indeed, we note that Appellant never argued in the trial court that *Edge* applied to the felony murder verdict based on possession of a firearm by a convicted felon, although he challenged that verdict on other grounds.

[3] We express no opinion on how such impeachment may occur under the new Evidence Code, which applies to cases tried after January 1, 2013. See Ga. L. 2011, p. 99, § 101.

deficient performance of trial counsel in not impeaching two witnesses with their prior convictions where he "did not produce certified copies of those convictions at the motion for new trial hearing to establish that these witnesses did, in fact, have criminal records"). See also *Kilby v. State*, 289 Ga. App. 457, 461 (657 SE2d 567) (2008) (treating the failure to produce certified copies of prior convictions that the defendant says trial counsel should have used for impeachment as a failure to make the required "showing of prejudice, i.e., that the use of the conviction would have made a difference in the outcome of his trial" (punctuation omitted)); *Baskin v. State*, 267 Ga. App. 711, 714 (600 SE2d 599) (2004) (same).

(b) Trial counsel did not request a limiting instruction on the use of Appellant's prior conviction for possession of a firearm by a convicted felon to prove his status as a convicted felon. Pretermitting whether counsel performed deficiently in this regard, Appellant did not show resulting prejudice. Evidence that Appellant had a prior felony conviction was relevant to the indicted charge of felony murder based on possession of a firearm by a convicted felon. See *Burgess v. State*, 278 Ga. 314, 316 (602 SE2d 566) (2004). In addition, the State did not bring out the specific facts of the underlying prior conviction; possession of a firearm by a convicted felon was not a type of prior offense that would be likely to inflame the passions of the jury and raise a significant risk of conviction based on improper considerations; and the evidence against Appellant was strong. Thus, Appellant did not show that there is a reasonable probability that the outcome of his trial would have been more favorable if his trial counsel had requested a limiting instruction. See id. Compare *Ross v. State*, 279 Ga. 365, 368 (614 SE2d 31) (2005) (involving the admission of the defendant's prior conviction for enticing a child for indecent purposes in his trial for murder of an unrelated victim).

*Judgment affirmed. All the Justices concur.*

MELTON, Justice, concurring.

While I agree with the ultimate conclusion that no reversible error occurred in this case, I am not convinced that the trial court did not err as an initial matter by failing to charge the jury that the offense of felony murder may specifically be mitigated by evidence that the defendant was acting "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation" at the time of the murder. See OCGA § 16-5-2 (a) (any type of "murder," not just malice murder, may be mitigated by evidence that would cause the offense to be reduced to voluntary manslaughter). Here, the trial court appears to have *only* instructed the jury that, "before [it] would be authorized to return a verdict of guilty on *malice*

murder, [it] must first determine whether mitigating evidence, if any, would cause the offense to be reduced to voluntary manslaughter." (Emphasis supplied.) The trial court made no specific mention of the fact that mitigating evidence may also cause a felony murder offense to be reduced to voluntary manslaughter. See, e.g., *Elvie v. State*, 289 Ga. 779, 780 (2) (716 SE2d 170) (2011) (trial court properly charged the jury that "before [it] would be authorized to return a verdict of guilty of malice murder *or* felony murder, [it] must first determine whether mitigating evidence, if any, would cause the offense to be reduced to voluntary manslaughter") (emphasis supplied); *Edge v. State*, 261 Ga. 865, 867 (2) (414 SE2d 463) (1992) (With respect to malice murder and felony murder "the trial court should instruct the jury [on voluntary manslaughter] so as to ensure adequate consideration of charges for both forms of homicide") (footnote omitted). Although this error was ultimately harmless, it also exposes what I believe is a fundamental problem with the manner in which this Court has, to date, applied its decision in *Edge v. State*, supra. As explained more fully below, I am concerned that this Court has unnecessarily restricted the scope of *Edge* to a degree that the case is incapable of being applied to factual scenarios that it should logically reach.

As stated above, while the trial court did instruct the jury that the crime of malice murder could be mitigated by evidence showing that the crime actually amounted to voluntary manslaughter, the trial court did not instruct the jury in this manner with respect to the crime of felony murder. Accordingly, the jury may not have been given all of the necessary tools to give proper consideration to the felony murder charges that formed the basis for Wallace's conviction. See *Chase v. State*, 277 Ga. 636, 639 (2) (592 SE2d 656) (2004) ("Jury instructions are the lamp to guide the jury's feet in journeying through the testimony in search of a legal verdict. The office of a charge by the court is to give to the jury such instruction touching the rules of law pertinent to the issues involved in a pending trial as will enable them intelligently to apply thereto the evidence submitted, and from the two constituents law and fact make a verdict") (citations and punctuation omitted). However, as the majority points out, any challenge to Wallace's conviction for felony murder predicated on aggravated assault was rendered moot, because, even if the jury was improperly denied the opportunity to consider voluntary manslaughter with respect to that charge, that conviction was ultimately vacated. Furthermore, with respect to Wallace's conviction for the remaining felony murder count predicated on possession of a firearm by a convicted felon, the majority also correctly points out that this Court has consistently refused to apply *Edge* to felony murder

convictions predicated on possession of a firearm by a convicted felon. See *Lawson v. State*, 280 Ga. 881, 883 (3) (635 SE2d 134) (2006); *Sims v. State*, 265 Ga. 35, 36 (3) (453 SE2d 33) (1995). I therefore agree with the majority that, under the current state of the law, no reversible error occurred with respect to the trial court's jury charge in this case.

I do, however, have some concerns about that state of our law. In *Edge*, this Court held that, where "there is but one assault and that assault could form the basis of either felony murder or voluntary manslaughter, a verdict of felony murder may *not* be returned if the jury finds that the assault is mitigated by provocation and passion." (Emphasis in original.) *Edge*, supra, 261 Ga. at 866 (2). However, this Court was careful not to limit our holding in *Edge* to only those cases involving voluntary manslaughter as it relates to felony murder predicated on aggravated assault. Indeed, while "we generally do not apply the *Edge* modified merger rule to any felony murder conviction in which the underlying felony was not the aggravated assault of the murder victim" (*Grimes v. State*, 293 Ga. 559, 561 (2) (748 SE2d 441) (2013) (citations and punctuation omitted)), the rule in *Edge* ostensibly *does* apply when the underlying felony to support the felony murder charge "is an integral part of the killing" of the victim, and not "independent of the killing itself." *Edge*, supra, 261 Ga. at 867 (2), n. 3. In this regard, there appear to be factual scenarios that would make the possession of a firearm by a convicted felon "an integral part of the killing" of the victim in the same manner that an aggravated assault would be, such that a conviction for voluntary manslaughter would appear to be sufficient to mitigate the felony murder offense based on the possession of a firearm.

For example, if a convicted felon who did not have a firearm was sufficiently provoked such that a killing qualified as voluntary manslaughter, and then that felon immediately grabbed a nearby gun and shot and killed the victim while still in the heat of passion, it is difficult to see how the possession of the firearm in that instance would be "independent of the killing itself" and not "an integral part of the killing" of the victim. Id. Indeed, just as the aggravated assault in that instance would have been committed only as a result of sufficient provocation, the actual possession of the firearm used during the crime was only accomplished as a result of that same provocation as well. While the crime of possession of a firearm by a convicted felon, in and of itself, can be accomplished through the mere possession of a firearm by that felon regardless of his or her mental state, that does not change the fact that the *murder* committed with that firearm would still amount to only voluntary manslaughter if it were committed "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation." OCGA § 16-5-2 (a);

*Edge,* supra, 261 Ga. at 867 (2) ("[T]he trial court should instruct the jury [on voluntary manslaughter] so as to ensure adequate consideration of charges for both [malice murder and felony murder].""). In this connection, where the possession of a firearm is accomplished through the very same irresistible passion that is tied to the aggravated assault, making such possession "an integral part of the killing of the victim," it seems to me, at the very least, that the defendant should be entitled to a jury charge on voluntary manslaughter to potentially mitigate the specific offense of felony murder predicated on possession of a firearm by a convicted felon. This Court, however, has analyzed a nearly identical scenario to the hypothetical described above and concluded that our decision in *Edge* would do nothing to mitigate a defendant's conviction for felony murder predicated on possession of a firearm by a convicted felon. See *Lawson,* supra, 280 Ga. at 883 (*Edge* did not apply to mitigate felony murder conviction predicated on possession of firearm by convicted felon where convicted felon grabbed rifle and immediately shot victim while in heat of passion and jury found him guilty of voluntary manslaughter).

Perhaps even more troublesome is the fact that this Court's blanket refusal to extend this Court's holding in *Edge* to reach felony murder convictions based on possession of a firearm by a convicted felon leads to anomalous results. Specifically, where, for example, a convicted felon reaches for a brick and kills someone with that brick after being sufficiently provoked, that defendant could ostensibly invoke *Edge* to show that his conviction for felony murder predicated on aggravated assault could not stand if a jury also found him guilty of voluntary manslaughter. If that same convicted felon instead grabbed an unloaded pistol and beat the victim to death with that unloaded pistol under the same circumstances, *Edge* would not apply, even if a jury ultimately concluded that the killing was accomplished under circumstances that amounted only to voluntary manslaughter. In either case, the killer grabs an object while in a provoked state, and the possession of that object is "an integral part of the killing of the victim," yet, in one scenario, *Edge* applies, and in the other it does not.

In light of the anomalous nature of this Court's application of *Edge,* and in light of the fact that this Court seems to have completely closed the door to the application of *Edge* in any case involving felony murder predicated on possession of a firearm by a convicted felon — even those cases where *Edge* would seem to logically apply — this Court should be careful when applying *Edge* in future cases.

DECIDED NOVEMBER 25, 2013.

*Sheueli C. Wang*, for appellant.

*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Marc A. Mallon, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.