303 Ga. 399
FINAL COPY

S17A1722. ANTHONY v. THE STATE.
S17A1723. PASS v. THE STATE.
S17A1724. STROZIER v. THE STATE.


BLACKWELL, Justice.

Johnathan Anthony, Antonio Pass, and Jekari Strozier were tried by a Cobb County jury and convicted of murder and criminal gang activity in connection with the beating and death of Joshua Chellew. They appeal, each raising several claims of error. Upon our review of the record and briefs, we find no reversible error as to their convictions for murder. We conclude, however, that the convictions for criminal gang activity must be set aside. For the reasons that follow, we affirm in part, reverse in part, and vacate in part.[1]

---

[1] Chellew was killed on June 30, 2013. On September 20, 2013, a Cobb County grand jury returned an indictment against Anthony, Pass, Strozier, and Kemonta Bonds, charging each with malice murder, aggravated assault, aggravated battery, and multiple counts of felony murder and criminal gang activity. They were tried together, beginning on August 18, 2014. The jury returned its verdicts on September 3, 2014, finding Bonds not guilty on all counts. The jury found Anthony, Pass, and Strozier not guilty of malice murder, but on that count, it found them guilty of the lesser included offense of voluntary manslaughter. The jury also found Anthony, Pass, and Strozier guilty of felony murder, aggravated assault, aggravated battery, and criminal gang activity. The trial court sentenced Anthony, Pass, and Strozier to imprisonment for life for felony murder predicated upon criminal gang activity.

*Issues Common to All the Appellants*

1. To begin, we consider the sufficiency of the evidence.[2] Viewed in the light most favorable to the verdicts, the evidence shows that, early on the morning of June 30, 2013, Chellew went with a friend to a gas station in Mableton. There, they came across Anthony, Pass, Strozier, and a number of other men. Many of these men — including Anthony, Pass, and Strozier — wore red clothing and were associated with a criminal street gang known as "Re-Up." Chellew was intoxicated, and he waved a blue bandana in sight of the men and started talking about the "Crips" gang. Some of the men approached Chellew, Strozier struck Chellew with his fist, and several others then began to beat

The verdicts as to voluntary manslaughter and the other counts of felony murder were vacated by operation of law, and the predicate criminal gang activity, aggravated assault, and aggravated battery merged into the felony murder for which they were sentenced. See Malcolm v. State, 263 Ga. 369, 372-373 (4), (5) (434 SE2d 479) (1993). The trial court concluded that three other counts of criminal gang activity did not merge with the felony murder for which they were sentenced, and on those counts, it handed down consecutive sentences for terms of years (involving both imprisonment and probation for Anthony and Strozier and only probation for Pass). Anthony, Pass, and Strozier timely filed motions for new trial, their motions for new trial were denied, and they timely filed notices of appeal. The cases were docketed in this Court for the August 2017 term. Anthony and Strozier's appeals were orally argued on September 18, 2017, and Pass's appeal was submitted for decision on the briefs.

[2] Only Pass disputes the sufficiency of the evidence. Nevertheless, it is our customary practice in murder cases to consider sufficiency, whether or not an appellant raises it as a claim of error. Consistent with that practice, we will consider whether the evidence is sufficient to sustain the convictions of each of the appellants in this case.

2

Chellew. Anthony, Pass, and Strozier all participated in the beating. As Chellew was beaten, he did not fight back, and he instead retreated from the gas station onto Mableton Parkway. His assailants followed him into the road, and the beating continued until Chellew lost consciousness. His assailants left him unconscious on the darkened roadway, where he almost immediately thereafter was struck by a car and killed. At trial, witnesses testified that Anthony, Pass, and Strozier were among the men who left Chellew lying on Mableton Parkway.[3]

The appellants were convicted of four crimes, all involving criminal gang activity in violation of the Georgia Street Gang Terrorism and Prevention Act.[4] More specifically, they were convicted of unlawful participation in criminal gang activity through the commission of an affray, unlawful participation in criminal gang activity through the commission of an aggravated assault, unlawful participation in criminal gang activity through the commission of an

---

[3] The jury also saw a video recording of the assault at the gas station (which was recorded by the gas station video surveillance system). In addition, the jury heard evidence that Anthony had admitted to investigators that he was present at the gas station (although he claimed that he attempted to stop the beating of Chellew) and that Strozier had admitted that he was in a fight at the gas station (although he claimed not to recall the details of the fight).

[4] See OCGA § 16-15-1 et seq.

3

aggravated battery, and felony murder predicated upon unlawful participation in criminal gang activity through the commission of a simple battery. To sustain these convictions, the State must have proved beyond a reasonable doubt that the appellants were associated with a criminal street gang, that they participated in criminal gang activity, and that they did so through the commission of the underlying crimes of violence. See OCGA § 16-15-4 (a) ("It shall be unlawful for any person employed by or associated with a criminal street gang to conduct or participate in criminal gang activity through the commission of any offense enumerated in paragraph (1) of Code Section 16-15-3."). See also Jones v. State, 292 Ga. 656, 659-660 (1) (b) (740 SE2d 590) (2013); Rodriguez v. State, 284 Ga. 803, 807 (1) (671 SE2d 497) (2009). And to sustain the convictions for felony murder, the State also must have proved beyond a reasonable doubt that their unlawful participation in criminal gang activity through the commission of a simple battery was a proximate cause of Chellew's death. See OCGA § 16-5-1 (c). See also State v. Jackson, 287 Ga. 646, 652 (2) (697 SE2d 757) (2010).

When the evidence is viewed in the light most favorable to the verdicts, it is sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that each of the appellants was guilty of unlawful participation in criminal

4

gang activity through the commission of an aggravated assault and an aggravated battery. It also is sufficient to authorize a trier of fact to find them guilty of felony murder predicated upon criminal gang activity involving a simple battery. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). It is not sufficient, however, to sustain the conviction for criminal gang activity involving an affray.

"An affray is the fighting by two or more persons in some public place to the disturbance of the public tranquility." OCGA § 16-11-32 (a). By definition, an affray involves a fight between willing participants. See Hawkins v. State, 13 Ga. 322, 324 (1853). See also Robert E. Cleary, Jr., Ga. Criminal Offenses and Defenses, Disorderly Conduct Crimes (II) (C) (Affray) (2017 ed.) ("In order to find a violation of [OCGA] § 16-11-32, it must be shown that two willing participants engaged in a fight."). Here, there is no evidence that Chellew willingly fought his assailants, only that he was beaten by them, tried to retreat, and then was beaten some more. The evidence fails to show an affray, and it cannot, therefore, sustain a conviction for unlawful participation in criminal gang activity through the commission of an affray. We reverse the appellants' convictions for criminal gang activity involving an affray.

5

2. Although the evidence was legally sufficient to authorize the jury to find the appellants guilty of felony murder predicated upon criminal gang activity involving a simple battery, as well as criminal gang activity involving an aggravated assault and criminal gang activity involving an aggravated battery, we next consider whether the trial court properly convicted the appellants of each of those offenses. Because the jury also found appellants guilty of voluntary manslaughter as a lesser included offense of malice murder, the appellants point to our decision in Edge v. State, 261 Ga. 865 (414 SE2d 463) (1992), and say that the trial court should have set aside the verdicts on felony murder and convicted them only of voluntary manslaughter. If, on the other hand, the trial court properly convicted them of felony murder, it erred, they say, when it failed to merge their criminal gang activity into the felony murder.[5] We conclude that Edge does not apply here, and so, the trial court properly convicted the appellants of felony murder. We are persuaded, however,

---

[5] All of the appellants raise the claim under Edge, but only Strozier and Pass press the argument about the merger of the criminal gang activity. Nevertheless, it applies equally to Anthony, and we properly consider it as to Anthony. See Nazario v. State, 293 Ga. 480, 485 (2) (b) (746 SE2d 109) (2013) ("merger as a matter of law or fact renders the merged conviction void and the resulting sentence illegal and requires the reviewing court to vacate the conviction and sentence even if the error was not raised in the trial court and indeed even if it is not enumerated as error on appeal").

6

that it erred when it failed to merge the remaining convictions for criminal gang activity into the felony murder.

(a) In Edge, this Court held that, when a defendant is found guilty of voluntary manslaughter and felony murder premised on an aggravated assault (both arising from the same assault), the defendant should be convicted and sentenced only for voluntary manslaughter. See 261 Ga. at 865 (2). We reasoned that almost every voluntary manslaughter involves a felonious assault, and if a verdict that the defendant was guilty of felony murder premised on aggravated assault were to prevail over a finding that the defendant also was guilty of voluntary manslaughter, it would effectively "eliminate voluntary manslaughter as a separate form of homicide." Id. at 866 (2). We also explained that culpability for an aggravated assault is naturally susceptible of mitigation by the sort of provocation and passion that inheres in voluntary manslaughter. See id. We later extended the rule of Edge to instances in which the felony murder is premised not on aggravated assault, but on another underlying felony that is equally integral to the homicide and susceptible of mitigation by the sort of provocation and passion that voluntary manslaughter involves. See, e.g., Sanders v. State, 281 Ga. 36, 37-38 (1) (635 SE2d 772) (2006) (aggravated

7

battery and arson). We have, however, declined to extend <u>Edge</u> any further than that. See, e.g., <u>Clough v. State</u>, 298 Ga. 594, 598 (2) (783 SE2d 637) (2016) (burglary); <u>Amos v. State</u>, 297 Ga. 892, 894 (2) (778 SE2d 203) (2015) (unlawful possession of a firearm by a convicted felon); <u>Smith v. State</u>, 272 Ga. 874, 879-880 (6) (a) (536 SE2d 514) (2000) (armed robbery).

Here, the appellants were found guilty and convicted of felony murder predicated on their unlawful participation in criminal gang activity through the commission of a simple battery. As with the aggravated assault in <u>Edge</u>, the simple battery in this case was integral to the homicide. And we acknowledge that most every voluntary manslaughter will involve a simple battery, and culpability for a simple battery ordinarily is susceptible of mitigation by proof of provocation and passion. But unlawful participation in criminal gang activity through the commission of a simple battery is not just a simple battery. It also involves association with a criminal street gang and a nexus between the simple battery and the activities of the criminal street gang. See OCGA § 16-15-4 (a). See also <u>Jones</u>, 292 Ga. at 659-660 (1) (b); <u>Rodriguez</u>, 284 Ga. at 807 (1). Unlawful participation in criminal gang activity through a crime of violence involves much more than the mere act of violence that may be integral to a

8

homicide. Not all (or even most) voluntary manslaughters involve criminal gang activity, so there is no danger that felony murder premised on criminal gang activity would effectively eliminate voluntary manslaughter. And the culpability for unlawful participation in criminal gang activity is generally not susceptible of mitigation by the sort of provocation and passion that voluntary manslaughter involves.[6] Edge has no application in this case, and the trial court properly convicted appellants of felony murder predicated upon unlawful participation in criminal gang activity through the commission of a simple battery. See Grimes v. State, 293 Ga. 559, 561 (2) (748 SE2d 441) (2013).

(b) Because the trial court properly convicted the appellants of felony murder, we next consider whether it erred when it failed to merge the crimes of unlawful participation in criminal gang activity through an aggravated assault and an aggravated battery into the offense of felony murder predicated on unlawful participation in criminal gang activity through a simple battery. The Street Gang Act provides that "[a]ny crime committed in violation of [the Act] shall be considered a separate offense," OCGA § 16-15-4 (m), and we

---

[6] People may join street gangs for a variety of reasons, but an irresistible passion produced by the sort of provocation with which voluntary manslaughter is concerned generally is not among those reasons.

previously have rejected the idea that "all gang-related offenses [must] be gathered into a single gang activity charge." Veal v. State, 298 Ga. 691, 695 (3) (784 SE2d 403) (2016).[7] Accordingly, we have held that unlawful participation in criminal gang activity through the commission of predicate crimes of violence "at different locations and different times against different victims" may form the basis for separate convictions under the Street Gang Act. Id. Here, however, all of the unlawful participation in criminal gang activity of which the appellants were found guilty occurred at the same location (Mableton Parkway and the gas station adjacent to it), occurred at the same time (early on the morning of June 30, 2013), and was directed against the same victim (Chellew).

The State says that the Street Gang Act permits multiple convictions for violations of OCGA § 16-15-4 (a) when a person associated with a criminal street gang participates in criminal gang activity by committing multiple predicate crimes, even when those predicate crimes are committed in one place, at one time, and against one victim. Perhaps that is so. But even if the State were

_____

[7] We have also held that OCGA § 16-15-4 (m) allows separate punishment for both participation in criminal gang activity and for the predicate offense through which the participation in gang activity is established. See Lupoe v. State, 300 Ga. 233, 239 (1) (b), n. 4 (794 SE2d 67) (2016) (defendant could be convicted and sentenced for both armed robbery and a violation of the Street Gang Act established by participation in criminal gang activity through the commission of that armed robbery).

10

right,[8] that only raises a question about whether this case actually involves multiple predicate crimes. That a criminal act might be charged in a variety of ways does not mean invariably that it will support multiple convictions and sentences.[9] In this case, all of the predicate crimes through which the appellants participated in criminal gang activity involved precisely the same conduct — the appellants striking Chellew with their hands and feet (without any indication of an intervening interval in the strikes).[10] Standing alone, those predicate crimes

---

[8] We need not and do not decide today whether the Street Gang Act goes as far as the State urges.

[9] For instance, the act of striking a single blow against another with a blunt instrument with intent to kill could be charged as attempted murder with malice aforethought, OCGA § 16-5-1 (a), simple assault by an attempt to commit a violent injury to the person of another, OCGA § 16-5-20 (a) (1), aggravated assault with intent to murder, OCGA § 16-5-21 (a) (1), aggravated assault with a deadly weapon or an object, device, or instrument which, when used offensively against a person, is likely to result in serious bodily injury, OCGA § 16-5-21 (a) (2), simple battery by making physical contact of a provoking nature, OCGA § 16-5-23 (a) (1), and simple battery by intentionally causing physical harm, OCGA § 16-5-23 (a) (2). Depending on the extent to which the blow causes harm to the victim, it might also be charged as murder with malice aforethought, OCGA § 16-5-1 (a), felony murder premised on aggravated assault with intent to murder, OCGA § 16-5-1 (c), felony murder premised on aggravated assault with a deadly weapon or object, device or instrument, id., battery, OCGA § 16-5-23.1 (a), or aggravated battery, OCGA § 16-5-24 (a). Whether or not the blow caused harm, if it caused the victim to apprehend an imminent violent injury, it might also be charged as simple and aggravated assault under a distinct legal theory of assault. OCGA § 16-5-20 (a) (2). That does not mean, however, that the perpetrator properly could be punished for a dozen or more crimes.

[10] As to the criminal gang activity that formed the basis for the felony murder of which the appellants were convicted, the indictment charged that they participated in that criminal gang activity through the offense of simple battery by "intentionally caus[ing] physical harm to Joshua Chellew by striking Joshua Chellew with [their] hands and feet." As

11

would merge together, see <u>Regent v. State</u>, 299 Ga. 172, 175-176 (787 SE2d 217) (2016), leaving only one predicate crime to form the basis for unlawful participation in criminal gang activity in violation of OCGA § 16-15-4 (a). Cf. <u>Stovall v. State</u>, 287 Ga. 415, 423 (696 SE2d 633) (2010) (Nahmias, J., concurring) (even under a broad construction of OCGA § 16-11-106, which (like the Street Gang Act) has a "separate offense" provision, only one conviction for possession of a firearm in the commission of a felony can be sustained when the various predicate felonies merge, leaving only one predicate felony to support such a conviction).

On the facts presented in this case, the offenses of unlawful participation in criminal gang activity through the commission of an aggravated assault and unlawful participation in criminal gang activity through the commission of an aggravated battery merge with the offense of unlawful participation in criminal gang activity through the commission of a simple battery, which formed the

---

to the criminal gang activity involving an aggravated assault, the indictment charged that they participated in criminal gang activity by "mak[ing] an assault upon the person of Joshua Chellew with [their] hands and feet," more specifically, by "strik[ing] Joshua Chellew with [their] hands and feet." And as to the criminal gang activity involving an aggravated battery, the indictment charged that they participated in criminal gang activity by "striking Joshua Chellew with [their] hands and feet," thereby causing Chellew to suffer "generalized trauma to his head, body, and legs." Cf. <u>Evans v. State</u>, 334 Ga. App. 283, 284 (1) (810 SE2d 164) (2018).

12

basis for — and properly was merged into — the felony murder of which the appellants were convicted and sentenced. See Johnson v. State, 254 Ga. 591, 596 (4) (331 SE2d 578) (1985). Accordingly, their separate convictions for criminal gang activity involving aggravated assault and aggravated battery must be vacated.

*Case No. S17A1722. Anthony v. The State.*

3. Anthony alone claims that the trial court erred when it struck a potential juror for cause at the request of the State. Anthony speculates that the prosecution sought to strike the potential juror based on his race. But the record shows that the juror at issue acknowledged that he would not be a good juror, that he resented the police, that he had "bias" about the court system, that he would not decide the case "strictly by the book," but would "go[ ] with [his] heart instead of what's the concrete evidence," and that he would only vote to convict the defendants "if it's 100 percent" clear that they were guilty. The trial court was "uniquely positioned to evaluate whether [the] potential juror [could] render an impartial verdict," see Trim v. Shepard, 300 Ga. 176, 178 (794 SE2d 114) (2016) (citation and punctuation omitted), and the trial court was authorized to believe the potential juror when he said that he would be unable

13

to do so. As a result, to the extent that Anthony has preserved this claim, it has no merit.[11]

4. Anthony contends that the trial court improperly commented on the evidence during the State's opening statement. After the prosecuting attorney said that police reports would be used only to refresh the memory of testifying officers and would not be available for jurors to review in the jury room, Pass's attorney objected "to the State explaining the law," and the trial court overruled the objection, saying that "[h]e's talking about what's evidence and what's not evidence." Anthony now claims that the trial judge's response was an improper expression of her opinion in violation of former OCGA § 17-8-57.[12] But the trial

---

[11] Anthony appears to argue as well that his trial lawyer was ineffective because he failed to challenge the disqualification of the prospective juror under Batson v. Kentucky, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986). But Batson applies only to the use of peremptory strikes, not strikes for cause, such as a prospective juror's admitted inability to decide the case solely on the evidence. See Head v. State, 276 Ga. 131, 134 (3) (575 SE2d 883) (2003). After all, a strike "for cause" — which is based on a juror's lack of impartiality or other good cause — is by definition not a strike based on the juror's race. And trial counsel's failure to make a meritless objection cannot amount to ineffective assistance. See Ellis v. State, 292 Ga. 276, 286 (4) (736 SE2d 412) (2013).

[12] OCGA § 17-8-57 was amended in 2015. Anthony was tried in 2014, and he acknowledges that no objection (under former OCGA § 17-8-57 or otherwise) was raised to the trial court's statement about "what's evidence and what's not evidence." As we noted in Pyatt v. State, 298 Ga. 742, 747 (3), n. 9 (784 SE2d 759) (2016):

> Under former OCGA § 17-8-57, the absence of an objection did not limit appellate review, and so, the failure to object in this case would be inconsequential. See Ledford v. State, 289 Ga. 70, 84-85 (14) (709 SE2d 239) (2011). See also Rouse v. State, 296 Ga. 213, 234-238 (765 SE2d 879) (2014)

14

court did not "express or intimate [her] opinion" as to any issue of fact, as to the veracity of any witness, as to the weight of any evidence, or as to the guilt of any of the defendants. Instead, she merely explained the reason for her ruling. "[T]he judge's comment here in no way constituted the type of direct comment on the substance or weight of the evidence that we have held to violate former OCGA § 17-8-57." Pyatt v. State, 298 Ga. 742, 748 (3) (784 SE2d 759) (2016) (citation and punctuation omitted).

5. Anthony also asserts that the trial court erred when it had an ex parte exchange with some of the jurors. On the morning after the first day of deliberations, the trial judge announced in open court (and in the presence of the appellants and their counsel) that she had encountered some jurors as she left the

---

(Nahmias, J., dissenting). In 2015, however, the General Assembly amended the statute and added a provision that limits the scope of appellate review in cases in which no timely objection was made at trial. See OCGA § 17-8-57 (b). Today, in the absence of a timely objection, a judicial comment — other than a comment on the guilt of the accused, see OCGA § 17-8-57 (c) — amounts to reversible error under the statute only to the extent that it is "[a] plain error which affects substantive rights." OCGA § 17-8-57 (b). Unlike the new Evidence Code, . . . the 2015 amendment of OCGA § 17-8-57 is not limited expressly to cases tried on or after its effective date. See Ga. L. 2015, p. 1050. . . . But because there is no reversible error in this case even under the former version of the statute, we need not decide whether the 2015 amendment properly applies. Instead, we will assume — without deciding — that former OCGA § 17-8-57 applies.

15

courthouse the previous evening. According to the trial judge, the jurors gave her a note that asked for the definition of battery (the judge put the note into the record), and the jurors asked the judge if they could have an easel in the jury room. When the judge explained the encounter to the parties the next morning (and asked the appellants if they had any objection), no objection was raised. As a result, Anthony waived any objection to this ex parte communication. See Hanifa v. State, 269 Ga. 797, 807 (6) (505 SE2d 731) (1998).

6. Anthony claims that the trial court improperly limited Pass's ability to cross-examine one of the State's witnesses about an alleged prior arrest for prostitution. Pass claimed that the arrest — and a subsequent dismissal of the prostitution charge — showed that the witness was biased in favor of the State. But Pass was unable to show that the case against the witness had been dismissed as a result of her agreement to testify, nor was he even able to produce any evidence that the charge had been dismissed at all. In fact, the only evidence that Pass had with any relation to the charge was a photograph apparently taken after the witness was arrested. The trial court ruled that Pass could not question the witness about the prostitution charge without the "proper paperwork" and offered to hold the witness so she could be brought back to testify again later.

16

Pass appeared to accept this ruling, and Anthony raised no objection. We therefore review this claim only for plain error. See Parks v. State, 300 Ga. 303, 309 (4) (794 SE2d 623) (2016).

Although the right of cross-examination includes a right to inquire into the partiality and bias of witnesses, see OCGA § 24-6-622, the right to inquire into partiality and bias is not without limits. See Smith v. State, 300 Ga. 538, 541 (3) (796 SE2d 666) (2017) ("[T]he right of cross-examination is not an absolute right that mandates unlimited questioning by the defense . . . ." (citation and punctuation omitted)). As we have explained before, "trial courts retain wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, interrogation that is only marginally relevant." Id. (citation and punctuation omitted). Here, neither Anthony nor his co-defendants presented any evidence — either at trial or in their motions for new trial — to show that the witness at issue had any bias in favor of the State based on an alleged prostitution charge. And while Pass asserted at trial that a prostitution charge had been dismissed shortly before trial, there is nothing in the record supporting that claim. As a result, Anthony has not shown that his "substantial rights were negatively impacted by counsel's not being able to explore [the area

17

at issue on cross-examination].” Parks, 300 Ga. at 309 (4). See also Lucas v. State, 303 Ga. 134 (2) (810 SE2d 491) (2018).[13]

7. Anthony contends that the trial court erred when it allowed the State to introduce evidence of a photograph that one of his friends took during the trial and posted on social media. The photograph depicted the appellants and was captioned, “Free my FAM!! So we can take flight . . . !” The State also introduced other photographs of the appellants that the same friend posted on social media and that depicted them allegedly “throwing” gang signs. Strozier objected to the introduction of the photograph taken in the courtroom on relevance grounds, but Anthony did not join the objection, so we review Anthony’s claim based upon the admission of the photograph only for plain error.[14] See Benton v. State, 301 Ga. 100, 103 (4) (799 SE2d 743) (2017). Here, Anthony cannot establish error, much less plain error.

---

[13] Anthony also says that his trial lawyer was ineffective because he failed to object to the limitation placed on the cross-examination of the witness at issue. But the “test for harm under plain error review is equivalent to the test in ineffective assistance of counsel cases for whether an attorney’s deficient performance has resulted in prejudice of constitutional proportions.” Martin v. State, 298 Ga. 259, 278 (6) (c) (779 SE2d 342) (2015). As a result, Anthony’s ineffective assistance claim based on the cross-examination of this witness is without merit.

[14] On appeal, Strozier raises no claim of error as to the admission of this photograph.

18

It is well established that "[d]ecisions regarding relevance are committed to the sound discretion of the trial court." Smith v. State, 299 Ga. 424, 429 (2) (b) (788 SE2d 433) (2016). Under OCGA § 24-4-401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The standard for relevant evidence is a "liberal one," and such evidence is generally admissible even if it has only slight probative value. See Booth v. State, 301 Ga. 678, 683-684 (3) (804 SE2d 104) (2017). The trial court did not abuse its discretion when it found that the photograph was relevant to show that the appellants were members of a gang.[15]

8. Anthony also argues that the trial court erred when it permitted the State to introduce evidence that he had been involved in prior criminal activity. First, the State introduced evidence that Anthony and several other men (while armed

---

[15] Anthony also claims that his trial lawyer should have argued that the photograph was prejudicial because it was taken in the courtroom and thereby could have "scare[d] the jury." Although relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice," OCGA § 24-4-403, the prejudicial effect of a picture taken of the appellants in the courtroom seems minimal, and Anthony has not shown that any prejudice would have required the exclusion of the evidence under Rule 403. See Olds v. State, 299 Ga. 65, 70 (2) (786 SE2d 633) (2016) ("[T]he exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly." (citation and punctuation omitted)).

with a handgun) confronted a man about having stolen money from one of them. Second, the State presented evidence that Anthony was involved in the theft of a man's wallet (which contained only pictures and membership cards, but nothing of significant value) and in the theft of an all-terrain vehicle. Finally, the State introduced evidence that Anthony was involved in a shoplifting incident. The trial court admitted all of this evidence under former OCGA § 16-15-9, which — at the time of Anthony's trial — provided that

> the commission of any offense enumerated in paragraph (1) of Code Section 16-15-3 [including theft as a "racketeering activity" and any offense involving a weapon] by any member or associate of a criminal street gang shall be admissible in any trial or proceeding for the purpose of proving the existence of the criminal street gang and criminal gang activity.[16]

---

[16] We note that this Court recently held OCGA § 16-15-9 to be unconstitutional to the extent that it permits evidence that *third-party gang members* have committed any of the enumerated offenses "to be used as proof against other individuals in any proceeding in which those other individuals are charged with the crime of participating in criminal gang activity" without subjecting such evidence to the requirements of the Confrontation Clause of the Sixth Amendment. State v. Jefferson, 302 Ga. 435, 440 (807 SE2d 387) (2017). Here, however, Anthony objects to the admission of evidence of his own criminal activity (and not the criminal activity of third-party gang members), so our holding in Jefferson is not implicated.

And the trial court properly instructed the jury that it could consider evidence of these other offenses only for that purpose.

Anthony failed to object to the admission of any of this evidence at trial, so we review for plain error. See Lupoe v. State, 300 Ga. 233, 245 (8) (794 SE2d 67) (2016). But, again, there was no error, much less plain error. Anthony was charged with violating the Street Gang Act, so evidence of his participation in gang activities — as provided in former OCGA § 16-15-9 — was direct evidence of an essential part of several of the offenses with which he was charged. The evidence was particularly probative in this case given that Anthony claimed that the gang was not involved with criminal activity, and the trial court did not err when it admitted evidence of these other crimes for the limited purpose of showing Anthony's involvement in a criminal street gang. See Lupoe, 300 Ga. at 245 (8).[17]

9. Finally, Anthony contends that he was denied the effective assistance of counsel based on numerous alleged failings of his trial lawyer. To obtain relief based on ineffective assistance of counsel, Anthony must show both that

---

[17] Anthony also argues that his trial counsel was ineffective when he failed to object to the admission of this evidence, but, again, "[t]he failure to make a meritless motion or objection does not provide a basis upon which to find ineffective assistance of counsel." Lupoe, 300 Ga. at 246 (8) (citation and punctuation omitted).

his counsel's performance was deficient and that this deficient performance prejudiced him. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove deficient performance, Anthony must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Jessie v. State, 294 Ga. 375, 377 (2) (754 SE2d 46) (2014) (citation and punctuation omitted). To show prejudice, Anthony must prove that his lawyer's error was "so serious as to deprive [him] of a fair trial, a trial whose result is reliable." Strickland, 466 U. S. at 687 (III). To that end, Anthony must show "a reasonable probability sufficient to undermine confidence in the outcome that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different." Miller v. State, 285 Ga. 285, 286 (676 SE2d 173) (2009) (citation and punctuation omitted). "If the defendant fails to satisfy either the 'deficient performance' or the 'prejudice' prong of the Strickland test, this Court is not required to examine the other." Jessie, 294 Ga. at 377 (2). See also Jones v. State, 290 Ga. 576, 578 (3) (722 SE2d 853) (2012). All of Anthony's ineffective assistance claims fail.

First, Anthony's lawyer did not object to the admission of evidence that a handgun and ammunition were found in the home that Anthony shared with his mother, but Anthony's lawyer did not object to this evidence because it was not prejudicial. Indeed, the evidence showed that Anthony's mother lawfully owned the gun and that the police did not even seize the gun when they searched the home. Second, Anthony's lawyer permitted Anthony to testify at his bond hearing, and some of that testimony was unfavorable to Anthony, but the record shows that Anthony voluntarily chose to testify at the hearing, and he does not claim that his lawyer forced him to do so or improperly advised him about whether to testify. Third, Anthony's lawyer did not object on hearsay grounds when a police officer testified that Anthony's cousin told him that he "wish[ed] [Anthony] would have just done what . . . I said, and I told him we were getting too old for this," but the record shows that this testimony was admissible as a prior inconsistent statement by a testifying witness under OCGA § 24-8-801 (d) (1) given that the cousin testified that he had not had such a conversation with Anthony. In addition, Anthony's lawyer did not join in an (unsuccessful) foundational objection to the admissibility of a floor mat from Anthony's cousin's car, but the trial court properly overruled that objection given that the

23

witness was able to identify the floor mat as the one he saw inside the cousin's car. Finally, Anthony's lawyer did not object to testimony from Anthony's cellmate about prejudicial things he claimed to have heard Anthony say in his sleep, but we cannot say that the lawyer's strategy of not objecting to this testimony was unreasonable; the lawyer testified at the hearing on Anthony's motion for new trial that, in his view, the cellmate's allegations about what Anthony said in his sleep were fantastical and tended to show only that the cellmate was biased against Anthony. And because Anthony has failed to establish deficient performance in any respect, his claim of ineffective assistance, including his claim that he was prejudiced by the cumulative effect of his lawyer's failures, has no merit. See Hoffler v. State, 292 Ga. 537, 543 (5) (739 SE2d 362) (2013).

*Case No. S17A1723. Pass v. The State.*

10. Pass claims that the trial court erred when it allowed the State to introduce evidence of a statement allegedly made by Anthony to his cellmate. The cellmate testified that Anthony told him Chellew "was instigating them" with his "rival" gang color, that "[t]here was a few of them" with Anthony at the time, and that they continued to hit Chellew after he ran into the street. The

24

cellmate also testified that, "I guess all of them began to attack [Chellew]." Strozier and Pass objected on the ground that the reference to "them" suggested that they participated in the assault and that the statement was therefore inadmissible under Bruton v. United States, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968). But Bruton applies only to testimonial statements, and it is clear that Anthony's statement to his cellmate was nontestimonial. As a result, the trial court properly rejected the claim that the admission of Anthony's statement violated Bruton. See Allen v. State, 300 Ga. 500, 504 (3) (796 SE2d 708) (2017).

11. Pass claims that the trial court erred when it admitted evidence that he had pled no contest to disrupting a public school and affray. On appeal, Pass argues that the evidence was inadmissible because OCGA § 17-7-95 provides that "[e]xcept as otherwise provided by law, a plea of nolo contendere shall not be used against the defendant . . . for any purpose." Pass did not object on this ground at trial, however, so we review his claim only for plain error. See OCGA § 24-1-103. Pretermitting whether Pass has shown that the admission of this evidence was obviously erroneous, he has not even alleged that the outcome of his trial was likely affected by its admission. Especially considering that other,

25

independent evidence was presented that Pass was involved in fighting at his public school, admission of evidence of his nolo plea was not so prejudicial as to require reversal (which led to his nolo plea for disrupting a public school and affray). See Hand v. State, 299 Ga. 95, 105-106 (4) (786 SE2d 648) (2016) ("even assuming that the other acts evidence was inadmissible . . . , its admission would constitute harmless error in light of other proper and persuasive evidence concerning the same past acts") (citation and punctuation omitted).

*Case No. S17A1724. Strozier v. The State.*

12. Strozier argues that the trial court erred when it permitted the State to introduce evidence that he had been involved in prior criminal activity. The State showed that Strozier pled guilty to a 2013 battery, that he was involved with the theft of a vehicle in 2012, and that he pled guilty to disorderly conduct in 2012. On appeal, Strozier claims that the State failed to show that evidence of these crimes was admissible under former OCGA § 16-15-9. And while Strozier objected to the admission of this evidence at trial, he did so on other grounds. As a result, we review this claim for plain error. See OCGA

26

§ 24-1-103; see also <u>Lupoe</u>, 300 Ga. at 245 (8). As with the similar claim made on appeal by Anthony, discussed in Division 8, Strozier has not established error, much less plain error. At the time of his trial, OCGA § 16-15-9 explicitly provided for the admission of evidence that the defendant had committed crimes involving violence or racketeering (including theft) "for the purpose of proving the existence of the criminal street gang and criminal gang activity."[18] And given that Strozier was charged with being a member of a criminal street gang, the State was required to show that Strozier's gang was actually involved in criminal activity. As a result, the trial court did not err when it admitted evidence of these other crimes for the limited purpose of showing Strozier's involvement in a criminal street gang. See <u>Lupoe</u>, 300 Ga. at 245 (8).

13. Finally, Strozier alleges that the trial court erred when it refused to provide a jury instruction that referenced an "intervening cause" of death. Strozier admitted at trial that he participated in the attack and even that he threw the first punch at Chellew. His defense was based on a claim that the attack on Chellew was not the proximate cause of his death. At trial, the court charged the

---

[18] Even if Strozier's conviction for disorderly conduct could not be considered the commission of a crime involving violence, Strozier has not even argued that he was prejudiced by the admission of that evidence to the extent required to reverse his convictions on a plain error analysis.

27

jury on the State's duty to show that the appellants' actions were the proximate cause of Chellew's death, but its charge did not use the phrase "intervening cause."[19] The trial court's charges on proximate cause adequately stated the law, however, and Strozier was not entitled to a charge that used the exact language he sought. See Stinski v. State, 286 Ga. 839, 851 (43) (691 SE2d 854) (2010).[20]

Judgments affirmed in part, reversed in part, and vacated in part. All the Justices concur.

---

[19] The trial court instructed the jury that "proximate cause exists when the accused act . . . played a substantial part in the bringing about of the victim's death, and the death was either a direct result or a reasonable probable consequence of the act"; that "[w]here one inflicts an unlawful injury upon the person of another, such injury may be found to be the cause of the death of the person injured whenever it shall be made to appear that the injury itself constituted the cause of death or directly and materially contributed to the happening of a secondary or consequential death"; and that "[t]he burden of proof rests on the State to prove beyond a reasonable doubt that the injury inflicted by the [d]efendant, if any, upon the deceased was the cause of death."

[20] Strozier also claims that the trial court erred when it admitted evidence of the statement that Anthony made to his cellmate as described in Division 10. But for the reasons provided therein, Strozier — like Pass — is unable to show that the trial court erred when it admitted evidence of Anthony's statement.

Decided March 5, 2018 — Reconsideration denied March 29, 2018.

Murder. Cobb Superior Court. Before Judge Grubbs.

Michael H. Saul, for appellant (case no. S17A1722).

Ashleigh B. Merchant, for appellant (case no. S17A1723).

Jones, Morrison & Womack, Wallace C. Clayton II, for appellant (case no. S17A1724).

D. Victor Reynolds, District Attorney, Jesse D. Evans, John R. Edwards, Michael S. Carlson, John S. Melvin, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General, for appellee.